The Mayor, etc., of Macon *et al. vs.* Harris.

---

THE MAYOR, etc., OF MACON *et al. vs.* HARRIS.

| 75 | 761 |
| 108 | 686 |
| 108 | 692 |

1. Where a case in equity is tried on special issues of fact submitted to the jury, it is necessary that the judge propound only such broad questions and put such main issues as will enable him, from the answers thereto, the admitted or uncontested facts, the pleadings and the principles of law and equity, to decree on the entire case and adjudicate the rights of the parties   To put sifting questions would tend only to confuse the jury, instead of drawing from them the main facts in the case.

2. The evidence being conflicting, the court below did not abuse his discretion in holding that it was sufficient to sustain the entire verdict, and each separate answer contained in it, and in refusing to disturb it.

3. The question at issue being the legality or illegality of the running of a railway car and engine on a street in a city and the measure of damages for the injury done to plaintiff's house and lot and the lessening of the value thereof, it was irrelevant to show that the porch of the plaintiff projected upon the sidewalk.   If such projection was illegal and a nuisance by reason of its illegality, the munici-

pal authorities could abate it, unless some license, or lapse of time, or other reason showing it to have been authorized or acquiesced in, should have legalized it.

4. Where the court properly charged on the measure of damages and the character of the elements going to make up the damage in such a case, there was no error in refusing a long request to charge, containing an elaborate enumeration of the elements which do or do not make up the sum of damages in such cases, or to enumerate a multitude of such elements of damage as may be considered or rejected by the jury.

5. Where a judge does not certify the truth of grounds of a motion for new trial, but refers to the record, this court will not look to a stenographic report containing the questions and answers of witnesses and the remarks of the court and counsel in order to verify such grounds. It is a brief of the oral testimony which may be made a part of the record on motion for new trial, and there is no law allowing such a stenographic report to be filed as part of the record.

(*a.*) The points do not seem to be of much materiality, even if verified.

6. If property be damaged by an illegal act of a corporation, the president thereof cannot bar the right to recover or mitigate the damages by an offer to buy the property from the injured person at a price put on it by any real estate agent, and such an offer is not admissible in evidence.

7. Where the presiding judge did not certify a ground of a motion for new trial, but said he did not remember it as counsel stated it, but "he, however, is so confident of it, that I dislike to disapprove it," this was, in effect, a disapproval.

(*a.*) When a case in equity was tried on special issues of fact, if a question was propounded by complainant's counsel at the conclusion of the argument, without notice to the respondent's counsel, and was given by the court in his charge, if counsel for respondents desired an opportunity to be heard in argument in respect to such issue, he should have asked it; and if he failed to do so, a new trial will not be granted on that ground

8. The re-opening of a case after it has been announced closed is a matter of discretion. Besides, the evidence offered in this case was cumulative in its character, and there was no abuse of discretion in refusing to re-open the case to admit it.

9. There was some evidence to support the finding of the jury that the road was built mainly for the benefit of the manufacturing company, and the presiding judge having approved the finding, this court will not interfere.

10. Verdicts must have a liberal construction, and should be construed so as to stand if practicable, and the judge may examine

the entire pleadings, the admissions in the answer and all undisputed facts in making a final decree. So construed, the verdict in this case, finding on issues of fact, was sufficient, and was not so conflicting as not to enable the court to render a legal decree.

11. The pleadings and verdict in this case were sufficient to authorize a decree for damages against the Mayor and Council of Macon, who, for an annual stipend, authorized the damage to be done, if the road was run improperly and *ultra vires.* Nor does a guaranty against loss to the city relieve it from liability to the plaintiff. Besides, this court has held that the city was part and parcel of the combination, and that each of the corporations was liable.

(*a.*) This covers the exception as to the liability of the manufacturing company for whose benefit the whole scheme was planned and executed, and of the street-car company, the charter of which was used for that purpose.

12. The decree was not objectionable because it did not award damages against individuals who were made defendants because interested in the matter, but who were in nowise actors therein except as officers or members of two of the corporation who were made defendants, or as vendor of the charter of the street-car company.

13. If a railroad existed and was used in front of the property of the complainant, and was a standing cause of continuous damage to him, and was put there by a sham contrivance for private ends, it ought to be removed, and all interested therein should be decreed to remove it.

(*a.*) If the individual respondents are not interested in its continuance, and did not, as individuals, take part in organizing and scheming to work the sham and operate the road, then it is right to omit or except them in the decree. But really they are not in the decree, "said defendants," referring to the three corporations.

14. If the charter of the street railroad company has been misused to benefit private persons, and if, instead of being used to operate a road for the public, by a sham arrangement and contrivance, it has been used to operate it for a private corporation, its operation or use ought to be perpetually enjoined.

January 5, 1886.

Equity. Railroads. Verdict. New Trial. Corporations. Municipal Corporations. Practice in Superior Court. Evidence. Damages. Decrees. Torts. Injunction. Before Judge SIMMONS. Bibb Superior Court. April Term, 1885.

This case, as made by the bill, will be found reported

in 73 *Ga.*, 428. . Upon its return from the Supreme Court, it was tried before a jury. To the report, as set out in the decision, it is necessary to add only that the grounds of. the motion for a new trial were as follows:

(1.) Because the verdict was contrary to law and evidence.

(2) to (10.) Because the second and the fourth to tenth findings, inclusive, of the jury were contrary to law and evidence (specifying them).

(11.) Because the court refused to submit the following question requested by respondents: "Is the city of Macon liable for any damage; if so, how, and for how much?"

(12.) Because the court refused to submit the following question to the jury: "Is the Bibb Manufacturing Company liable in this case in any way except as a guarantor of the city of Macon; if so, in what other, how, and how much?"

(13.) Because the court refused to charged, that if the complainant had encroached on the sidewalk, this should be considered in assessing damages.

(14.) Because the court refused to cnarge: "If the Macon Street Railroad Company built, and is operating by license from the city council the right to use the street with reasonable obstruction is not an element of damage, nor is the jolting over iron rails, nor the apprehension of the safety of children, nor are possibilities in case of sickness, nor inconvenience to visitors, nor obstructing ingress or egress, nor any fanciful or speculative damages or sentimental injuries, elements of danger. The damage which the law recognizes must not be fanciful, but must be tangible and determinable by proof. It must be actual depreciation, based on substantial reasons shown by the testimony and all traceable to building and running of the road or both." [In a note the presiding judge refers to the general charge on this subject.]

(14½.) Because the court admitted the following testimony of Green J. Blake, over objection of respondents: "I do

not know that the running of steam-cars increases the risk of fire, but I suppose the insurance companies would charge more for insurance.' [The court refers to the record.]

(15.) Because the court rejected testimony of George S. Obear, to the effect that the purchasers of the street railroad at sheriff's sale did so on assurance of the directors that the franchise passed. [The court refers to the record.]

(16.) Because the court ruled out Hanson's testimony, to the effect that when Harris first threatened suit, he offered to purchase his property at whatever real estate agents, selected by Harris himself, might appraise.

(17.) Because the court refused to submit to the jury the question, "Was there a legal reorganization of the Macon Street Railroad Company, and is not the company in actual possession and control of the franchise, and is not said road being operated under said franchise?"

(18.) Because the court refused to submit to the jury the question, "Was the Macon Street Railroad on Hawthorne street constructed and run for the benefit of the Bibb Manufacturing Company only, or was it constructed and being operated for the public—whoever desired it?"

(19.) Because the court refused to submit to the jury the following questions: "What was the value of Peter Harris's property on Hawthorne street in 1881 before building the road? Its value at the time of filing the bill? Its rental value before road constructed? Its rental at the time of filing bill?"

(20.) Because the court erred in submitting to the jury the question, "Was the new organization a fair business transaction, or was it a sham to enable the Central Railroad to get possession of the street railroad mainly for the benefit of the Bibb Manufacturing Company?" without having first submitted the same to respondents' counsel and given them an opportunity to discuss the same to the jury. [Note by the court: "I do not remember this as Mr Davis states it. He, however, is so confident of it, that I dislike to disapprove it."]

(21.) Because the court erred in not permitting respond-ents to re-open the case, after announcing closed, and to take testimony of A. P. Collins as to damage to Harris's property.

[To this ground the court added the following note:

" The taking of the testimony in this case consumed the entire day. Night was coming on, and I announced that I intended to get through with the evidence before I adjourned. Counsel went on for some-time after this, and finally said they were through, with the excep-tion of above, who was detained by sickness in his family. They asked leave to introduce him in the morning, which was agreed to by court. Dr. Collins was then in the court, and had been there all day. It is true that Mr. Harris stated next morning what he states in this ground. Mr. Davis, who had examined the witness, stated that he did not forget Collins, but had changed his mind. I refused to allow him to be introduced, as it would have re-opened the whole case."]

(22.) Because the finding of the jury to 3d question is contrary to evidence.

(23.) Because the verdict and finding of the jury are conflicting, insufficient, do not settle the material issues, and not sufficient to authorize any intelligent decree.

HILL & HARRIS ; HARDEMAN & DAVIS, for plaintiffs in error.

L. N. WHITTLE ; C. L. BARTLETT ; GUSTIN & HALL, for defendant.

JACKSON, Chief Justice.

This record unfolds the trial of the case of Peter Harris against the Mayor and Council of Macon, the Macon Street Railroad Company, the Bibb Manufacturing Company and certain individuals, before the jury, the case on demurrer having been tried by this court at the September term, 1884,* and the equity of the bill in its general bearings on the three corporations having been then affirmed on said demurrer. A verdict was returned on the trial before the

*73 *Ga.*, 428.

jury favorable to Harris, and a decree entered thereupon for damages, for an injunction, and the removal of the track. Whereupon the case was again brought here on a motion for new trial and errors assigned on the decree.

1. In respect to the motion for a new trial, it should be understood that the cause went to the jury on issues presented to them by the court, and the refusal to propound certain questions or issues requested by the plaintiffs in error makes one of the errors assigned. At the present term, in the case of *Coleman, sheriff, et al. vs. Slade & Etheridge*, it is held that it is necessary that the judge propound only such broad questions and put such main issues as will enable him, from the answers thereto, the admitted or uncontested facts, the pleadings and the principles of law and equity, to decree on the entire case, and adjudicate the the rights of the parties. It was further held that to put sifting questions would tend but to confuse the jury, instead of drawing from them the main facts of the case. It seems to us that the judge below followed this rule before it had been laid down here in that case, and committed no error in declining to sift the jury further. This covers the 17th, 18th and 19th grounds of the motion for a new trial, while the 11th and 12th grounds, while also narrow and sifting questions are requested to be put, make rather issues of law than of fact.

2. The 1st, 2nd, 3d, 4th, 5th, 6th, 7th, 8th, 9th and 10th grounds of the motion for a new trial are based upon the allegation that the entire verdict and each separate answer of it are contrary to and without evidence to sustain it. On examining the record, we cannot hold that the judge of the superior court abused that discretion, which the statute gives to him and not to us, in reviewing evidence before him and the jury, and awarding a new trial or denying it where facts are contested. There is conflict here, and the verdict with the refusal of the court below to disturb that verdict settles that conflict.

3. We cannot see what relevancy the projection of the

porch of the plaintiff upon the sidewalk had upon the legality or illegality of the running a railway car and engine on the street, or upon the measure of damages for the damage to his house and lot and the lessening of its value by the running steam cars on the street. If the projection of his porch was illegal, and a nuisance by reason of its illegality, the authorities of Macon could abate it, unless some license, or lapse of time, or other reason showing it to have been authorized or acquiesced in should have legalized it. But how it could be set-off to damages in a suit of this sort is not apparent, and therefore we can see no error in refusing the request to charge complained of in the 13th ground.

4. The request contained in the 14th ground is quite lengthy, and contains many particulars. In such cases, where the court properly charges on the measure of damages, and the character of the elements which go to make damage in such a case as this, there is no error in refusing such an elaborate enumeration of the elements which do or do not make up the sum of damage in such cases; or to enumerate a multitude of such elements of damage as may be considered or rejected by the jury. The general charge covers the point so far as is necessary to enlighten the jury and elucidate the issues.

5. The 14½ and 15th grounds of the motion relate to the admission and rejection of evidence. The judge does not certify the truth of these grounds, but refers to the record, we suppose, of the questions and answers taken down by the stenographer, for their verification or refusal to verify, or their modification. We are ignorant of any law which allows such questions and answers to be brought here, or filed of record, on a motion for a new trial, or otherwise made record. It is a brief of the oral testimony that may be made record on motions for a new trial, and not the stenographer's report of questions and answers and remarks of counsel and the court on the examination of witnesses. We therefore decline to verify by looking to an

illegal record for a verification which the judge ought to make on the motion for a new trial, or decline to verify on the same motion. The points do not seem of much materiality even if verified.

6. The offer of Mr. Hanson to purchase the property of the defendant in error at a price put on it by any real estate agent, was not admissible. If a man's property be damaged by an illegal act of another person, the president of that other artificial person cannot bar the right to recover or mitigate the damage by an offer to buy out the injured person. The party injured has the right to keep his home and live in it free from illegal encroachment by anybody upon it, or unauthorized damage done by anybody to it. This disposes of the 16th ground.

7. The 20th ground is that the court should not have submitted this to the jury : " Was the new organization a fair business transaction, or was it a sham to enable the Central Railroad to get possession of the street railroad mainly for the benefit of the Bibb Manufacturing Company ? " " For the following reasons, this question was propounded by complainant's counsel at the conclusion of the argument. No notice was given thereof to respondent's counsel, they not knowing such a question was to be propounded until read to them by the court in his charge. Respondent's counsel, not therefore having any opportunity to discuss its effect or the applicability of the evidence thereto. Nor did the court in the charge to the jury therein present the theories of the respondent in reference thereto." The presiding judge does not make a clean verification of the above, but says, " I do not remember this as Mr. Davis states it. He, however, is so confident of it that I dislike to disapprove it." Does not the judge disapprove it, though disliking to do so ? It strikes us so. It is his recollection which must govern. Confidence and emphasis by counsel, however high his character, should not induce the judge to certify what he himself cannot remember. To do so would be, perhaps, unjust to the

v 75-49

other side. They might deny with equal asseveration of what was their memory, and to determine between them by confiding in one rather than the other would involve the judge in trouble, and weaken his power with the bar.

Even, however, if verified, we are clear that a new trial ought not to be granted, for the reason that counsel did not then, when first he heard it read, ask to be heard upon that issue. Shall a long case be tried over again to permit him to argue a point which he did not ask leave to argue on the trial, though at a late stage of it? We think not. Besides, we incline to think that counsel ought to know the prominent issues which must arise in the case and discuss them; and the court is hardly bound to reveal them, by the law, until the charge. Under the old system, counsel have been often astonished at prominence given to a point in the case in the charge, yet no new trial could be had therefor. Then the verdict was general; now special. Then issues were presented in the charge orally; now in writing. We hardly see much difference between the two.

But be this as it may, counsel should have asked to be heard; failing to do that, he is precluded from having the entire case tried over again to hear his views on a single point.

8. The 21st ground relates to the refusal of the court to open the case to examine another witness. If there had been anything in the point, it is blunted by the explanation of the judge appended to the ground. These matters must be in his discretion. The evidence, if in, would have been cumulative on a conflicting point, and if discovered anew, would not have availed for a new trial. Much less should it avail, when the judge had announced the case for evidence closed, after notice openly given that he would close on that day. To open what he certifies would have been the whole tide of evidence *pro* and *con*, more and more cumulative on each pile, was a question for him alone, and except when the power inherent in the *nisi prius* judge

is abused damagingly to a party, this court should hold off its reviewing hand.

9. The 22d ground attacks the finding of the jury that the road was built mainly for the Bibb Manufacturing Company, as unsupported by evidence. The judge approves the finding. There is some evidence surely to support it. That bars our interference.

10. The 23d and last ground is that the finding on the several issues conflicts, does not cover the material issues in the case, and is not sufficient to decree upon. Considering that verdicts must have a liberal construction, and should be construed so as to stand if practicable, and considering that the judge may examine the entire pleadings, the admissions in the answer, all undisputed facts, and bring all before him to make a final decree, we hold that the verdict is sufficient, and not conflicting to the extent that it may not be construed to make a consistent narrative of the true facts at issue, and enable the court, with the adjuncts referred to, to adjudicate the cause and make an intelligent and legal decree.

The jury find that the present organization of the Macon Street Railroad Company derived its title solely from Mrs. Hill; that at the time the members organized they did not have a majority of the stock, but acquired it afterwards; that the road was constructed on Hawthorne street mainly for the Bibb Manufacturing Company, but is open to the use of the public when they desire to use it; that the property of the defendant in error has been lessened $1,500.00 in value by this road; that he has been damaged $100.00 per annum since steam was used up to the time of trial; that if the railroad remained his permanent damage would be eighteen hundred dollars; that the new organization of the Macon Street Car Company was not a fair business transaction, but a sham to get possession for the benefit of the Bibb Manufacturing Company; that the present Street Railroad Company has no property, and that it owes no debts. From the several questions and answers the above

summary is clearly deduced as the verdict of the jury, and upon it the following decree was entered, which will bring us to the consideration of the exceptions to that decree, there being no error, in our judgment, to the denial of a new trial before another jury.

11. This is the decree:

"That the complainant do recover of and from the defendants, the Macon Street Railroad Company, the Mayor and Council of the city of Macon and the Bibb Manufacturing Company, damages at the rate of one hundred dollars per annum from the 26th day of October, 1881, until their compliance with the second clause of this decree, and that upon the application of complainant's counsel execution may issue therefor.

"2d. That within thirty days from the date of this decree, said de- fendants do proceed to remove from Hawthorne street in front of the premises of complainant, to-wit, lots nine and ten of the southern range of two acre lots in the city of Macon, the railroad laid down upon said street, by or under the authority of said defendants, and that they and their confederates and agents be perpetually enjoined from using any railroad track upon said street; and that this clause of this decree may be enforced by attachment.

"3d. That the costs of this case be paid by respondents, and that execution do issue therefor. July 13th, 1885."

Upon this decree error is assigned on seven grounds. The first is, "Because the pleadings and verdict did not authorize the money decree for damages against the Mayor and Council of the city of Macon." Why not? The city authorized, for an annual stipend, the damage to be done, if the road was run improperly, and *ultra vires*. Not a foot of it could have been built and fire engines worked thereon but by her leave. It is undisputed in this record that she granted the leave; the jury found the quantum of damage, and the city is responsible therefor. Of course, she may recover from her guarantor against loss, but that does not relieve her from liability to Harris. Besides, as held when the case was here on demurrer, she was part and parcel of the combination, and each and all are liable, which covers also the next two assignments, the Bibb Manufacturing Company and the street car company are neither of them

responsible for damages. It was for the benefit of the Bibb Manufacturing Company that the whole scheme was planned and executed, and the street car company is the very person which, by its charter, gave the only shadow of authority there was to operate the road at all.

12. The fourth assignment is because the decree should have been also entered against the other defendants—alluding to the individuals made defendants, because interested in the matter, but in nowise actors therein except as officers or members of two of the corporations, or vendor of the street car company's charter, and, therefore, not such actors as required a decree for damages against them.

13. The fifth assignment is that the pleadings and verdict did not authorize the removal of the road from the front of complainant's property, by all the respondents.

If it was there, a standing cause continuously of damage, and put there by a sham contrivance for private ends, to-wit, the benefit of the Bibb Manufacturing Company, it ought to be removed, and all interested therein should be decreed to remove it. If the individual respondents are not interested in its continuance, and did not, as individuals, take part in organizing and scheming to work the sham and operate the road, then it is right to omit or except them in the decree. But really they are not in the decree. "Said defendants" refers to the three corporations, not to them. It is enough that it operates upon the city, the manufacturing company and the street car company; they will remove it, and that is all that is necessary. This last remark covers the 6th assignment of error on the decree, that being, because it required the city and the manufacturing company to remove it, as well as the street car company. We think, as all combined to do the illegal thing, all ought to undo it, and that the verdict, pleadings and undisputed facts combined authorized the decree against the three.

14. The 7th assignment of error is the perpetual injunction. If the charter of the street railroad company has

been misused to benefit private persons; if, instead of being used to operate a road for the public, by a sham arrangement and contrivance, it has been used to operate it for a private corporation, its operation or use ought to be perpetually enjoined. The injunction is upon the facts made in the pleadings, upon undisputed facts, and upon the verdict. In their light, it must be read and will be read. It contemplates this scheme and this road and its user under these facts, and it enjoins its use forever. Should the general assembly grant a charter for such a road, and should it be used *bona fide* for the public, regularly running every day, under a charter not purchased for private use, then, under such grant from the general assembly, a case would be made upon which this injunction would not operate. Upon the road, as it now stands, it does, and under the finding of the jury and the approval thereof by the presiding judge, it ought to operate forever.

Judgment affirmed.