Brooks *vs.* Fowler, administrator, and *vice versa.*\*          | 82   329|
                                                               | 98   671|

Where a husband bought land and paid his vendor, as a part of the
purchase price thereof, $500 of his wife's money, and from the facts
and circumstances of the transaction it is fairly inferable that
it was the intention of all parties that the husband and wife should
become the joint purchasers of the property, each to own an interest
in proportion to the amount paid by them respectively, the mere
fact that the legal title was made to the husband will not operate
to defeat the wife's equitable title. As between the parties, a trust
in her favor will be implied.

(a) While a wife may legally give her property to her husband, a gift
will never be presumed. The evidence to support it must be clear
and unequivocal, and the intention of the parties free from doubt.

(b) It does not appear that it was the purpose of the wife to lend her
money to her husband, nor his to borrow ; no act showing that they
ever treated the transaction as one creating a debt from him to her
is disclosed by the evidence. If, however, there was no intention
that they should·jointly own the land, still if $500 of her money
was in fact paid upon its purchase by her husband, and his vendor
knew this·at the time of the transaction, a trust will be implied in
her favor, to the extent that her money paid for the land, as against
both her husband and his vendor; and upon her election to treat
an interest in the land as hers, the title to such interest should be
protected and set up by appropriate decree.

(c) The vendor having parted with both title and possession of the
land under his deed to the husband, who occupied it jointly with
his wife, the presumption is that she has received whatever of in-
come from it to which she was entitled by reason of any interest
she may have had. But if she and her husband jointly owned it
and the husband received all its income, he and not his vendor
should account therefor.

(d) Under the facts of the case, the wife was not entitled to a money
verdict. The most she was entitled to was, to have the land sold
and to share in the distribution of the proceeds, her interest being
in the proportion of the purchase money paid by her to the princi-
pal of the vendor's debt for the balance ; or the land might be par-
titioned so as to give her that proportion in the land itself.

(e) The vendor having removed from this to another State within less
than one year after the purchase of the land in 1872, and resided
there continuously until the bringing of this suit, the complainant's
cause of action was not barred.

(f) Though an issue submitted to the jury appears to have been suffi-
ciently·full, certain and definite to base a decree upon, if counsel de-

---

\*BLANDFORD, J., being disqualified, Judge JENKINS, of the Ocmulgee circuit, was
designated to preside in his stead.

sire to make it more so on the next trial, the court will doubtless amend.

(*g*) The court below did not err in refusing to render either of the decrees moved for by the defendant, nor in granting a new trial.

July 31, 1889.

Equity. Husband and wife. Title. Gifts. Trusts. Statute of limitations. Practice. New trial. Before Judge SMITH. Taylor superior court. August term, 1887.

Reported in the decision.

W. S. WALLACE & SON, for plaintiff.

O. M. COLBERT and C. J. THORNTON, for defendant.

JENKINS, Judge.

On the 30th day of November, 1872, Julius Turner executed and delivered to B. C. M. Brooks a deed to 528¾ acres of land lying in Taylor and Macon counties. The consideration of the conveyance was $500.00 paid in cash, and two notes for fifteen bales of cotton each, made by the grantee and B. C. Brooks, his son, as security. Turner afterwards sued out an attachment for the purchase money owing on the notes, and on the 8th day of April, 1879, obtained judgment for the sum of $1,678.39, besides interest. On this judgment execution was issued, which was by the sheriff of Taylor county levied upon that portion of the land purchased lying in that county.

On March 2d, 1880, Mrs. Caroline S. Brooks, wife of B. C. M. Brooks, filed her bill in Taylor superior court against Turner, the sheriff, and her husband. The purpose of this bill seems to have been to enjoin the levy referred to until certain equities set up by the bill were adjusted. The bill set up a claim on the part of the com-

plainant against Turner for money due her from the
estate of her father, of which Turner was the adminis-
trator.   It alleged that he, Turner, resided in Texas,
was insolvent and owned no property in Georgia except
the judgment against Brooks.

On November 27th, 1885, Mrs. Brooks filed a second
bill.   This bill recited the pendency of the first and set
up substantially the same equities.   It further alleged
that the $500.00 paid by B. C. M. Brooks to Turner, on
the purchase of the land in 1872, was the money of com-
plainant, derived from her father's estate, and that at
the time of its payment by Brooks to Turner the latter
knew that it belonged to her.   She prayed that the sale
of the land bought by Brooks from Turner be enjoined
until the equities set up could be adjusted by final de-
cree, and that when the land should be finally sold, the
sum of $500.00 and interest from November 30th, 1872,
be paid to her from the proceeds.   The bill was finally
amended by striking therefrom all reference to the
equities set up, except the claim to the $500.00 and inter-
est.   Turner, by answer, denied all knowledge that the
$500.00 belonged to the complainant, and alleged that
if such was the case it was concealed from him.   He
also filed demurrer and plea of the statute of limitations,
claiming that the cause of action originated, if at any
time, more than four years before the bringing of the
suit.   On the trial of the case, the following questions
were submitted to the jury, which were answered as
indicated:

1st.  What amount of money, if any, of the complain-
ant went into the purchase of the land by B. C. M.
Brooks from defendant, and when was it paid?   An-
swer—$500.00, paid November 30th, 1872.

2d.  If B. C. M. Brooks used the money of complainant
to pay defendant, did defendant know that the money

so received by him was the separate estate of complainant, or did he have reasonable notice, if such was the fact ? Answer—He was reasonably notified.

3d. Is B. C. M. Brooks insolvent ? Answer—We believe he is not.

4th. Where does Julius Turner now reside, and where has he resided continually since last of 1872 or first of 1873 ? Answer—In Texas.

5th. Has he any property in this State other than this judgment against Brooks? If so what and where located ? Answer—No other property.

Whereupon the defendant moved the court to grant a decree that the bill be dismissed at complainant's cost. The foregoing motion being overruled, the defendant moved the court to grant a decree that the land be sold, and from the proceeds the *fi. fa.* of Turner be first paid in full, and from the balance the complainant be paid $500.00, and the remainder, if any, be paid to Brooks. The court overruled the 2d motion also, and instead decreed that the land be sold and from the proceeds the complainant be first paid $500.00, with interest thereon from the 30th day of November, 1872, and the balance be paid on Turner's *fi. fa.*, or as much thereof as might be necessary to extinguish it.

The defendant moved for a new trial (1–3) on the grounds that the verdict was contrary to law and evidence ; (4–5) because the court refused to render the decrees requested by him ; (6) because the court rendered the decree which was rendered ; (7) because the defendant filed a plea of the statute of limitations, and that issue was not submitted to a jury and they did not pass on same ; and (8) because the second issue submitted to the jury was indefinite, meagre and uncertain, and no decree could be rendered under the finding on that issue. The court granted a new trial, and com-

plainant excepted and assigns error thereon.   The defendant filed a cross-bill of exceptions, assigning error as set forth in his motion for new trial.

On the trial the complainant, Mrs. Brooks, testified that the $500 cash payment belonged to her; that it came from her father's estate; that at the time Turner received it, she was present and heard her husband tell Turner that it belonged to her; that it was the identical money that Turner paid to her husband from her father's estate.   She was corroborated by her husband and by B. C. Brooks, the former testifying that while he and Turner were walking over the land, pending negotiation for its sale, he told Turner that he had not money to pay for it and Turner replied that he had his wife's money, and on being told that Brooks did not care to take that, Turner replied that it did not make any difference.   Brooks admitted that his wife knew that the money was paid to Turner, and that she made no objection to it then.

From these facts, it may be fairly inferred that it was the intention of all of the parties that the husband and wife should become the joint purchasers of the property, each to own an interest in proportion to the amounts paid by them respectively.   If such was their intention, the mere fact that the legal title was made by Turner to the husband will not operate to defeat the wife's equitable title.   As between the parties, a trust will be implied in her favor.   Code, §2316(3).

The inference of an intention by the parties that the husband and wife should become joint purchasers, is strengthened by the fact that, in the partial payment of the purchase price of the land with .the wife's money, none of the elements of a gift appear.   There was no intention on the part of the wife to give her separate estate to the husband, and none on the part of the hus-

band to accept the same as a gift.  While a wife may legally give her property to her husband, a gift will never be presumed.  The evidence to support it must be clear and unequivocal, and the intention of the parties free of doubt.  " Gifts from the wife to the husband are to be scrutinized with great jealousy."  *Sasser vs. Sasser*, 73 *Ga.* 282.  Nor does it appear that it was the purpose of Mrs. Brooks to lend her money to her husband, nor his to borrow.  No evidence of indebtedness was taken, no time for payment agreed upon, no word or act indicating a purpose to create the relation of debtor and creditor.  No effort on the part of the wife to collect the money is disclosed by the evidence, nor any act showing that the parties ever treated the transaction as one creating a debt.  On the contrary, the time for a recovery at law by Mrs. Brooks from her husband, had elapsed long before the levying of Turner's *fi. fa.*

If, however, there was no intention that the husband and wife should jointly own the land, still if $500.00 of her money was in fact paid upon its purchase by the husband, and Turner knew such to be the case at the time of the transaction, a trust will likewise be implied in the wife's favor to the extent that her money paid for the land, as against both Brooks and Turner, and upon her election to treat an interest in the land as hers, the title to such interest should be protected and set up by appropriate decree.

A trust will be implied whenever the legal title is in one person but the beneficial interest, either from the payment of the purchase money or other circumstances, is either wholly or partially in another.  Code, §2316.

" A husband cannot use his wife's separate money to buy property for himself, and if he invests her funds in real estate in his own name, equity will fix a trust upon

the land, and having jurisdiction for one purpose, it will do complete justice and give full relief between the parties." 73 *Ga.* 275.

It is clear that Turner parted with both title and possession of the land under his deed to Brooks made in 1872, and the complainant and her husband jointly occupied it. The presumption is, that she has received whatever of income from the land to which she was entitled by reason of any interest she may have had in the same, and that no one is accountable to her on that score. If, however, she and her husband jointly owned the land, and her husband has received all of its income, he and not Turner should account therefor.

Under the facts as they appear in this record, we do not think that Mrs. Brooks was entitled to a money verdict. The most that she was entitled to was to have the land sold, and to share in the distribution of the proceeds, her interest in the same being in the proportion of the purchase money paid by her to the principal of Turner's debt for the balance; or the land might be partitioned so as to give her that proportion in the land itself. *Cheatham vs. Lord,* 79 *Ga.* 770.

The complainant's cause of action clearly was not barred. The defendant, Turner, removed from this State to the State of Texas within less than one year after the purchase of the land in 1872, and resided there continuously up to the bringing of this suit. The time of his absence from the State, and until he returns to reside, is not to be counted or estimated in his favor. Code, §2929. The contrary rulings of this court, cited by counsel, were made upon the law as it stood prior to the act of 1855. That act (§2929 of the code) changed the law. *Langston, ad'r, vs. Aderhold,* 60 *Ga.* 376, reviewed and affirmed.

The second issue submitted to the jury was suffi-

ciently full, certain and definite to base a decree upon. If counsel desire to make it more so on the next trial, the court will doubtless amend.

It follows from what has been said, that the court did not err in refusing to render either of the decrees moved for by the defendant, nor in granting a new trial.

Judgment affirmed in both cases.