ALLEN *v.* ALLEN.

270

No. 14943.   SEPTEMBER 11, 1944.

R. B. Pullen and Noah J. Stone, for plaintiff in error.
Houston White and A. M. Roan, contra.

GRICE, Justice. ■ This case presents a number of questions. The first assignment of error is based on an order of the trial court, dated December 9, 1943, vacating one granted on November 23, 1943, during the same term, consolidating the instant case with a libel for divorce which was also pending in the same court between the same parties, Mrs. Allen being the plaintiff. The second assignment is founded on the refusal of the court thereafter to dismiss the case. Both may be considered together, since they involve the same contention, which is that the first order, granted on the motion of Mrs. Allen, consolidating the cases, was in effect a dismissal of the present suit, the order of consolidation directing that said cases proceed under "No. 136,607," which was the divorce action. Simpson v. Brock, 114 Ga. 294 (40 S. E. 266), holds that, where a plaintiff by his counsel voluntarily dismisses his petition, whether for a good or bad reason, the court has no

authority, over objection of the defendant, to reinstate the action. To the same effect, see *Petty* v. *Piedmont Fertilizer Co.*, 146 *Ga.* 149 (90 S. E. 966); *Colclough* v. *Bank of Penfield*, 160 *Ga.* 303 (127 S. E. 752). The second order above referred to was granted over the objection of the plaintiff in error, and if the order of consolidation amounted to a dismissal of the petition, both assignments of error are well taken, otherwise not. The plaintiff in error relies on certain language found in *Spinks* v. *LaGrange Banking &c. Co.*, 160 *Ga.* 705 (129 S. E. 31), to wit, that, "The consolidation of the prior action at law amounted practically to a withdrawal of the legal action, and was tantamount to an order dismissing it." The facts there were that the bank, having sued at law a corporation as maker and Spinks as endorser on certain promissory notes, thereafter brought an equitable petition to impound the property of Spinks and subject it to the payment of the bank's debt. The petition in the latter case, referring specifically to the first suit, and saying that the equitable petition was brought in aid of it, sought the same relief as that asked for in the first suit, and more. The bank offered an amendment to its equity suit, praying that the two be consolidated. This was objected to on various grounds, which are set forth in the opinion in that case, and upon the overruling by the trial court of the several grounds of objection, Spinks excepted. The only question thereby presented for decision was, did the trial court err in allowing the amendment? Whether or not the consolidation of the two cases was tantamount to a dismissal of the suit at law was not in issue before the court. In the *Spinks* case, the equity suit, brought in aid of the first one, did practically take its place, and the situation there presented being in the mind of the writer of the opinion, it was perhaps not inappropriate to say, in that case, that the amendment which prayed for a consolidation amounted practically to a withdrawal of the legal action, and was tantamount to dismissing it; but the record in that case did not call for a ruling as to whether such would be the effect, and the language quoted is not binding as an authority on the proposition. The two cases referred to in the order in the instant case involved altogether different issues. The order consolidating them directs that "said cases," etc., and that "said consolidated cases shall be set for trial," etc., following the written motion of Mrs. Allen

that the two cases "be tried together," and that a day be set "for the trial of said consolidated cases." She did not in her motion ask that the two cases proceed under the one case or the other, although the order consolidating them read that they proceed under the number assigned to the divorce case. The order of consolidation on her motion was not a voluntary dismissal of the instant case. There is no error in either of these two assignments.

■ Before the case proceeded to trial and before the introduction of any evidence, counsel for Allen submitted to the court in writing a number of questions, asking that the jury be directed to answer them specifically. Among the questions so submitted by his counsel were the following: "1. Did E. W. Allen pay the insurance premiums on the life-insurance policy of Basil M. Woolley from 1905 to the date of the death of Basil M. Woolley in 1917? 2. If your answer to the preceding question is 'Yes,' what was the amount of these premiums?" The court refused to submit these two questions to the jury, and error is assigned on this refusal. The plaintiff in error raises the same issue in a motion to modify the decree, and in one of the special grounds of his motion for new trial. In each of the several methods of attack, the fundamental question is, whether or not under this record Allen is entitled to receive credit from Mrs. Allen for the insurance premiums paid by him on a policy of insurance issued on the life of Dr. Basil M. Woolley, Allen's wife, the daughter of Dr. Woolley, being named as the beneficiary therein. The evidence shows without dispute that Allen paid $2355.36 from the year 1905 until the death of the insured in 1917. Allen testified as to a quarrel between his wife and her father, at which time the $5000 insurance policy was mentioned, and an agreement was entered into between Allen and her father with reference thereto, Allen's testimony being as follows: "I will endeavor to state what the conversation was. The best that I can say was that I was to take over the policy and pay the premiums and carry it as an investment for my own benefit. I remember Mrs. Allen was not present. At the time that that was said about the premiums on the $5000 policy, that I was to keep up the premiums on the policy, I told Mrs. Allen that I was paying the premiums on the policy. I told her I was carrying it for my own investment. I can't recollect the exact words that Dr. Woolley said about my carrying it. I

had the policy at that time; it was delivered to me in Woods White's office. Mrs. Allen never had the policy in her possession. I do not recollect how much the premiums were that I paid on the policy. I paid every one of them down to 1917. I owned at that time the property on St. Paul Avenue. The policy I was to take over was the $5000 policy. No one else paid a dime on the premiums on that $5000 policy, that I remember, from 1905 until Dr. Woolley died." His contention, as developed by his testimony (the pleadings as to this being silent), was not that the policy belonged to Mrs. Allen and that he, Allen, claimed a lien on it because of having paid the premiums, but that the policy became his and that he was carrying the same as an investment for his own benefit. As further contradicting his present position, that, in an accounting with her, she should be charged with the premiums paid by him, there was in evidence a suit filed by Allen against the executrix of Dr. Woolley to recover these premiums from his estate, said suit containing an allegation that the sum so paid out by him was expended for and in behalf of Dr. Woolley. Allen's testimony shows that he knew that his wife was the beneficiary named in the policy, and that she executed no assignment of it to him. There can not be gathered from this record any evidence that there had been an agreement between Mrs. Allen and her husband that there should be an immediate change of ownership, and therefore nothing to treat it as an equitable assignment. *Jones* v. *Glover,* 93 *Ga.* 484 (20 S. E. 50); *Smith* v. *Folsom,* 190 *Ga.* 460, 471 (9 S. E. 2d, 824); *Blount* v. *Metropolitan Life Ins. Co.,* 192 *Ga.* 325 (15 S. E. 2d, 413). There is no evidence that Mrs. Allen ever agreed to repay him the amount expended by him for premiums. The parties were husband and wife. The jury found that this insurance money was hers. If the policy in which she was the beneficiary was kept alive for her benefit by his paying the premiums, he, when made to account to her for the proceeds which he converted to his own use, is not entitled to a credit for the premiums paid by him under the circumstances here shown. He insists that he is entitled to a credit for these premiums upon application of the maxim contained in the Code, § 37-104: "He who would have equity must do equity," etc. If, in paying these premiums, he did not do so under some agreement with the insured by which the latter himself promised

to repay him, as might be inferred by the suit which he filed against Dr. Woolley's executor, then realizing that to keep the policy in force was for the benefit and protection of his wife, perhaps he was moved thereto by the force of another truth as ancient as the maxim which he relies on, to wit: "But if any provide not for his own, and specially for those of his own house, he hath denied the faith, and is worse than an infidel." Paul's Reports, vol. 10, 1 Timothy, 5, 8. Also compare the Code, § 108-116. Mrs. Allen was under no duty in law or in equity to account to him for the premiums paid by him.

■ The plaintiff in error excepted to the decree in so far as it provided that Mrs. Allen should have a judgment, not only for $3917.78, but also for interest thereon at 7 per cent. per annum from November 24, 1917. The jury had found that said sum was a part of the separate estate of Mrs. Allen at the time he received the same, to wit, on November 24, 1917. The undisputed testimony showed that it was not turned over to him as a loan or as a gift. It also showed without dispute that as soon as he received it he appropriated it to his own use, claiming it as his own, and mingling it with his own funds so that it could not be traced. There is nothing in the evidence to indicate that Mrs. Allen knew that he had converted the money, nor that she made any demand upon him to account until the day the present suit was filed. Allen testified that she never laid any claim to the money until her attorney presented her demand to him immediately before the institution of this action. The jury made no finding as to interest. Counsel for Allen take the position that, since she alleged that she turned this money over to him to be invested and reinvested by him for her benefit, and since the jury found that it was not delivered to him upon any such understanding, the effect of the jury's finding, that this money belonged to her as a part of her separate estate at the time Allen received it, was not to make him an implied trustee for her, but that the transaction simply created him a naked depositary, and therefore he was not liable for interest thereon until after a demand on him and his refusal to repay. "Whenever a husband acquires the separate property of his wife, with or without her consent, he must be deemed to hold it in trust for her benefit, in the absence of any direct evidence that she intended to make a gift of it to him."

*Barber* v. *Barber,* 125 *Ga.* 226 (53 S. E. 1017). It was said in *Young* v. *Wilson,* 183 *Ga.* 59 (187 S. E. 44), a case where the husband did not as here hold legal title to the wife's property, that the statement just quoted was obiter—and it was—and that it was based on the theory that the husband managed and controlled the property for his wife.

Every statement in an opinion is not to be condemned as unsound merely because it may be classed as obiter. There is many a dictum in the books which can not be successfully assailed. Furthermore, it must be remembered that the opinion, though presented by a single judge, nevertheless is the opinion of the court, and those who concur therein stand sponsor for its contents. Although not compelling as a precedent, yet if it emanates from an able and careful judge, the chances are that the expression is a sound one. If one were seeking light as to what the law is, he would be bold indeed not to give weight to an expression from a legal luminary, although it may be on a point not necessary to a decision of the case in which such expression occurred. The meteors that form in mere space, and, proceeding out of order, so to speak, dash athwart the skies, are sometimes more illuminating than the fixed stars. It is difficult for a judge in expanding a legal proposition to prevent some dicta from occasionally slipping into the discussion. This is frequently but the overflow of a mind surcharged with knowledge on the general subject before the court. The quotation above given from *Barber* v. *Barber* is found in the headnote. It is not developed in the opinion. To "acquire" sometimes means to become the owner of property; to make property one's own. 1 Words and Phrases (Perm. ed. 640). When given this rendering, we apprehend that no well-founded criticism could be lodged against the soundness of the pronouncement, even though it be obiter. See the following cases, which accord with the statement in the *Barber* case: *Maddox* v. *Oxford,* 70 *Ga.* 179; *Sasser* v. *Sasser,* 73 *Ga.* 275; *Brooks* v. *Fowler,* 82 *Ga.* 329 (9 S. E. 1089).

In *Garner* v. *Lankford,* 147 *Ga.* 235 (93 S. E. 411), this court ruled that where a wife turned over money of her own to her husband, who by investment in other property mingled it with his individual estate, the legal title was vested in him under an implied trust. That case went off on demurrer, it being alleged

in substance as follows: The plaintiff's intestate, the mother of the first set of children, was Nancy Veal Minor. In 1859 her father, William Veal, gave and delivered to her $600, stating at the time of the gift that "it was to remain her property, and not to become the property of her husband, said George Minor, by possession or otherwise." Upon receiving the money, Nancy Veal Minor "in turn handed the same to her said husband, said George Minor." After thus acquiring its possession, George Minor "invested the said money in land or other profitable investment or investments, and . . said money went into his estate . . as a trust fund of the said Nancy Veal Minor, . . and not as the money of said George Minor, . . and was so recognized and treated." There, it "was so recognized and treated" as the wife's money. Here, the husband never recognized his wife's ownership. That is the only difference in the two cases. *Rucker* v. *Maddox,* 114 *Ga.* 899 (41 S. E. 68), is unlike the instant case only in that there the wife entrusted a fund in the hands of her husband to him under an agreement that he was to use and improve the same for her benefit, and in the instant case there was no such agreement. We are of the opinion that, without any agreement to that effect, the law will imply one and treat the husband as trustee for his wife. In principle the case falls within the rule announced in *Wallace* v. *Mize,* 153 *Ga.* 374 (112 S. E. 724), as follows: "When the husband buys land with money which is the separate estate of his wife, and takes the title in his own name, in the absence of any evidence that the wife had given or loaned her money to him, the law raises an implied trust in favor of the wife, and makes the husband her trustee holding the property in trust for the use and benefit of his wife." For the pronouncement just made the court cited, among other authorities, *Barber* v. *Barber,* supra. The statement there enunciated has been often applied, and while none of the cases heretofore decided by this court may have dealt with the identical state of facts here presented, a number of them will be found referred to in the opinions heretofore mentioned, which recognize and give effect to the principle controlling this issue. Counsel for the plaintiff in error argue earnestly that the answers by the jury to the questions submitted entirely eliminated any theory of trust. We can not agree. Under the finding of the jury an implied trust was created, and the

question as to interest can not be determined on the assumption
that Allen was liable simply for money had and received, or as
a naked depositary.

■ Having received his wife's money under circumstances such
that the law will imply that he took it in trust for her, when
called on to account for it, from what date does interest commence
to run? The money was placed in his hands on November 24,
1917. He at once mingled it with his own funds. He denied
that it ever was her money. The jury found otherwise. He con-
verted it to his own use on the day he received it. From that
moment there was a breach of the trust. The Code, § 57-107, is
as follows: "In the absence of an agreement to the contrary,
interest shall not run until default; hence where money can be
recovered because of mistake or other like reasons, no interest shall
run until after demand and refusal to refund." This section first
appeared in the Code of 1895. It was codified from a decision
of this court, to wit, *Georgia Railroad & Banking Co.* v. *Smith.*
83 *Ga.* 626, 634 (10 S. E. 235). A Code section is to be con-
strued in the light of the source from which it came, unless the
language of the section demands a different construction. *Calhoun*
v. *Little,* 106 *Ga.* 336 (3) (32 S. E. 86, 43 L. R. A. 630, 71 Am.
St. R. 254), and other authorities to like effect cited in *Alropa
Corporation* v. *Pomerance,* 190 *Ga.* 1, 8 (8 S. E. 2d, 62). Section
57-107 is applicable only to instances where money, paid by mis-
take or other like reasons, can be recovered, and has no reference
to situations where a trustee has converted the property of another
to his own use. *Georgia Railroad & Banking Co.* v. *Smith,* supra,
was a case where the State, as owner of the Western & Atlantic
Railroad, sued the other road to recover overcharges paid by the
former to the latter on iron consigned to another railroad. The
overcharges resulted from a mutual mistake, and all that the court
did was to lay down a general rule touching money paid by mistake.

In *Anderson* v. *State,* 2 *Ga.* 370, it was ruled that he who has
fraudulently received, or wrongfully detains the money of another,
is chargeable with interest thereon from the time he received it.
In the opinion by Judge Nisbet appears the following: "There
is no question about the liability of executors, administrators,
guardians, and other trustees, to pay interest upon trust funds
in their hands, even before the *cestui que trust* is legally entitled

to demand them; much more therefore such funds shall bear interest when improperly withheld from those entitled to receive them." While the quoted words were obiter, since the court was there dealing with the default of an agent, any expression in a judicial opinion from the pen of Judge Nisbet is bound to command respect from any one familiar with the reputation for learning and accuracy borne by that great jurist.

Certain legatees of Story brought suit against the executor of Davidson, he being Story's executor, for an accounting. After holding that the plaintiffs could recover an item representing attorney's fees, which Davidson had paid to himself, the question arose as to the date from which interest should be charged. The court, in *Davidson* v. *Story*, 106 *Ga.* 799, 802 (32 S. E. 867), said: "Further complaint is made, in regard to this item, that no interest should have been charged until a demand was made upon the executor of Davidson. It was contended that this case fell within the rule laid down in section 2881 of the Civil Code, which declares that, 'Where money can be recovered because of a mistake, or other like reasons, no interest runs until after demand and refusal to refund.' There is nothing in this case which would make the retention by Davidson of the attorneys' fees such a mistake as to make the section applicable, nor does any other reason appear which would relieve from the penalty of paying interest one who, without authority of law, diverts from the proper channel funds in his hands. That this diversion was made in good faith and with honest intentions, is not sufficient to bring the case within the rule laid down in the section quoted. If Davidson's estate is liable for the retention of this amount, it is certainly liable for interest from the time it was improperly retained, and the decision of the auditor to this effect was not erroneous."

*Newman* v. *Thompson*, 134 *Ga.* 137 (67 S. E. 662), was a case where an administratrix brought suit against a son of her intestate to recover a sum of money obtained by the son from his mother. It was alleged that the mother did not have sufficient mental capacity at the time to make a contract, and that the money was obtained from her by undue influence exerted over her by the son. This court held that if the plaintiff was entitled to prevail, she was entitled to receive interest from the date of the agreement

between the intestate and her son, transferring to the latter the money sued for.

*Bank of Waynesboro* v. *Walters, 135 Ga. 643 (70 S. E. 244),* was a suit by a married woman against a creditor of her husband to recover money she paid to settle a debt of her husband in consideration that a criminal prosecution against him would be stopped. It was ruled that, even though the wife did not demand the repayment of the money with which she discharged her husband's debt until some time after its payment, she could recover interest thereon from the time of its payment; also, that it was immaterial that when she demanded repayment she demanded a larger sum than she in fact paid, as she was entitled to recover without making a demand.

In each of the three cases last referred to, the defendants were in reality trustees. It was a breach of their trust when they appropriated the money to their own use, just as here Allen commenced to treat his wife's money as his own as soon as he received it, and so mingled it with his own funds that it could not be traced. The foregoing decisions are in line with what has been ruled by the courts of other states, to wit, that the trustee is chargeable with the legal rate of interest from the date of the breach of the trust. State ex rel. Raskin *v.* Shachat, 120 Conn. 337 (180 Atl. 502) ; Stuck *v.* Schumm, 290 Mass. 159 (194 N. E. 895) ; Hershey *v.* Stone, 10 N. J. Misc. 967 (162 Atl. 89) ; Gullick *v.* Slaten, 169 S. C. 244 (168 S. E. 697). Mrs. Allen was entitled to interest from November 24, 1914, that being the date her husband breached his trust by converting the money to his own use.

■ It is urged upon us that, regardless of what the law generally may be as to the recovery of interest from the date of the breach of the trust, it was error here to include it in the decree because the jury did not so find. Here is the jury's finding: "4(a) Do you find that plaintiff, Mrs. E. W. Allen, is entitled to recover from defendant Allen said sum of $3917.78 in this case? Answer, Yes." The other questions and answers, which became a part of the jury's verdict, make it clear that "said" sum of $3917.78 was the proceeds of certain insurance policies on her father's estate payable to her, which Allen received on November 24, 1917, and for which she made a demand on him, as alleged in her petition, and the demand was refused on November 28, 1941. Counsel for

the plaintiff in error cite *Miller* v. *Georgia Railroad Bank,* 120 *Ga.* 17 (3) (47 S. E. 525), for the proposition that it is necessary, in order to recover interest, that there should be an allegation in the petition seeking such recovery, as well as a prayer. The case does not so hold. They cite *Williams Realty & Loan Co.* v. *Simmons,* 188 *Ga.* 184 (3 S. E. 2d, 580), for the proposition that, where a general verdict is rendered, it is in the discretion of the jury to allow or not allow interest. That was an auditor's case, and dealt with unliquidated damages. The ruling was merely that the judge and auditor, in the absence of any prayer for interest, did not err in refusing to allow its recovery, irrespective of whether or not, if prayed, it would have been recoverable on such an unliquidated demand eo nomine or as part of the damages recovered, in the discretion of the auditor, as in case of a jury. Counsel cite a passage from *McCrary* v. *Gano,* 115 *Ga.* 295 (41 S. E. 580), quoted approvingly in *Davis* v. *Wright,* 194 *Ga.* 1, 7 (21 S. E. 2d, 88), as follows: "After the dispersal of the jury, the judge has no power either to add to or take from their finding. It is true that under the direction given to the jury they were instructed to find interest in favor of the plaintiff; but their verdict did not embrace such a finding, and the court was without authority to make any finding for them. Suppose, in a given case, the verdict of a jury should be, in all respects, palpably contrary to the charge of the court. It certainly would not be contended that the judge would have the power to correct the error of the jury in disregarding the instructions of the court by discarding the verdict returned and substituting another in its place." In the *Gano* case, the verdict was a general one. In the *Wright* case, there were no special findings in response to questions submitted by the judge to the jury. In each of these cases, the judge himself directed that the verdict be amended. Here, the judge did nothing of the kind. He merely undertook to apply the law to the verdict that was returned. Therein lies a distinction between those two cases and the present one. Here, the judge submitted to the jury no question as to interest; they made no finding as to interest. When the judge included interest in the decree, he did not go counter to any finding of the jury. He merely applied the law to their finding that the wife was entitled to recover from the husband "said sum of $3917.78."

The Code, after making a provision for special verdicts in equity cases, declares that, "Upon the special verdict of facts, so rendered, the presiding judge shall make a written judgment and decree in said cause under the law applicable to the same." § 37-1104. This section was codified from the act approved February 23, 1876 (Ga. L. 1876, p. 105), and follows the exact language of the statute. Section 37-1201, which declares that, "A decree is the judgment of the judge in equitable proceedings upon the facts ascertained," is of earlier origin. Its parentage may be traced to section 4122 of the Code of 1863, which states that, "A decree in chancery is the judgment of the chancellor upon the facts ascertained." The section last noticed does not read, "upon the facts ascertained by the jury." Nor does the one first referred to mean that the decree can go no further than to deal with nothing in the case except such facts as are contained in the special verdict. In *Peppers* v. *Peppers,* 194 *Ga.* 10 (20 S. E. 2d, 409), reference is made in division 3 of the opinion to certain contentions of one of the parties, and the following language was used: "The jury made no finding as to that; hence that was not one of the 'facts ascertained,' and without it there could as to this issue be no decree for the complainant." There was no insistence in that case that there was anything in the pleadings, in the admissions made by the parties, or in the undisputed facts, to have justified the court in framing a decree assuming that such contentions had been established—which case has been re-examined while the present case was under consideration—nor would the record have borne out such an insistence had it been presented. It would have been better had a statement to that effect been made in the report of that case or in the opinion, so as to show that that case did not involve the principle ruled in *Mayor &c. of Macon* v. *Harris,* 75 *Ga.* 761, and reaffirmed in *Law* v. *Coleman,* 173 *Ga.* 68 (159 S. E. 679). Such an interpretation of the section as contended for by counsel would require the judge to submit to the jury questions as to which there is no issue under the evidence or the pleadings. One of the advantages in submitting special questions in a complicated equity case is to focus the attention of the jury only on the relevant, material issues as they have been developed during the trial. In *Bryan* v. *Osborne,* 61 *Ga.* 51, it was ruled that under the act of 1876 (Ga. L. 1876,

p. 105), authorizing special verdicts in equity cases, only such issues need be submitted to the jury as, together with the facts admitted in the pleadings, will bring out the truth of the case fully enough to sustain the decree. In *Jefferson* v. *Hamilton,* 69 *Ga.* 401, it was held that, under the act, only such questions need be put to the jury as will enable them fully to find the facts in issue and not admitted by the pleadings. In *Coleman* v. *Slade,* 75 *Ga.* 61, it was decided that in such a case it is the duty of the judge to submit such issues as will enable him to make a decree from the verdict and from the pleadings and the undisputed facts. In *Mayor &c. of Macon* v. *Harris,* supra, it was determined that in this kind of a case it is necessary for the judge to propound only such broad questions and put such main issues as will enable him, from the answers thereto, the admitted or uncontested facts, the pleadings, and the principles of law and equity, to decree on the entire case and adjudicate the rights of the parties. In *Law* v. *Coleman,* supra, it was held that, "A decree must follow the verdict upon which it is founded; but this principle does not require that no decree be rendered unless the verdict contains all the facts upon which it is founded. A decree should follow the finding of facts found by a special verdict; but while the judge in rendering the decree can not go contrary to the facts found in a special verdict, he may examine the pleadings, admissions made by the parties, and all undisputed facts. In the absence of anything to the contrary, it will be presumed that the judge was authorized by the pleadings, admissions made by the parties, or by the undisputed evidence, to enter the decree which he rendered." That the jury made no special finding as to interest, did not, under the facts of this record, prevent the judge from including it in his decree.

It was further argued that the decree as to interest is erroneous, in that for a part of the time, under a suit filed by Mrs. Allen against him, Allen was enjoined from changing the status or from disposing of any of his property belonging to him, except a reasonable amount necessary for his living expenses. Counsel's argument as to this is, that Mrs. Allen, having secured a court order of the above nature, ought not to have him penalized by paying interest to her, since by her own action she has tied his hands. The order and the petition on which it is based would not, we apprehend,

be construed by any court to prevent him from paying Mrs. Allen, since the very object of her suit was to compel payment to her out of his assets. There is no merit in this contention.

An additional insistence of counsel for the plaintiff in error is, that to allow interest would be to decree contrary to the finding of the jury, and this can not be done. *Law* v. *Coleman, supra.* The finding in answer to question 4(a) that the plaintiff was entitled to recover from the defendant $3917.78, with the other specific finding that he received this sum from the plaintiff on a day named, was not a finding against interest. In *Mayor &c. of Savannah* v. *Champion,* 54 *Ga.* 541, there was a general verdict as follows: "We the jury find for the appellant $1759.29, as of 12th December, 1870, payable in currency." The trial court permitted a judgment to be entered with interest from the date of the verdict. This court in that case ruled as follows: "In our judgment, the legal effect of the verdict was to find for the plaintiff the sum of $1759.29, as being due him on the 12th of December, 1870, and that being so, the court should have ordered the judgment to have been entered on the verdict for the sum of $1759.29, with interest thereon from the 12th of December, 1870, that being the time the jury, by their verdict, found the principal sum to have been due the plaintiff." It will be noted that the verdict there, as here, was silent as to any finding for interest; but the jury having found for the appellant a certain sum "as of" a certain date, this court said that interest from such date should be included in the judgment.

In the motion to modify the decree, several other distinct reasons were urged why it was erroneous to include interest thereon. All of these have been considered, and the points so made must be ruled adversely to the contentions of the plaintiff in error, on application of the principles of law already referred to. This is true also as to the assignment of error on the decree itself. It was not erroneous to include in the decree the provision as to interest.

■ The final assignment of error is to the overruling of the motion for new trial as amended. Complaint is made therein that the judge erred in submitting to the jury question 4(a) ; that the answers to the original questions demanded a decree in favor of the defendant; and that the last question contained an intimation by the court and tended to influence the jury. Objections to the

submission by the judge of questions to the jury for the rendition of a special verdict under the Code, § 37-1104, can not be made for the first time in a motion for new trial. *City of Atlanta* v. *Carroll,* 194 *Ga.* 172 (21 S. E. 2d, 86). If the inclusion in a question of an intimation by the judge as to what had or had not been proved would form an exception to the rule just stated, it° is enough to say that the question here complained of did not contain any such intimation.

■ It is urged in the motion for new trial that the plaintiff did not prove her case as laid, in that she alleged that her money was delivered to Allen with the understanding that he was to invest and reinvest it for her, whereas the jury found that she did not deliver it to him with such an understanding. The gravamen of Mrs. Allen's case is that her husband received from her funds belonging to her separate estate under circumstances such as the law would imply that he held the funds in trust for her, and that he converted them to his use. While understanding as to investment and reinvestment of the funds for her benefit would perhaps be an appropriate allegation, if true, still under the authorities heretofore cited he is liable to her with or without such understanding. In the recent case of *Sewell* v. *Anderson,* 197 *Ga.* 623 (30 S. E. 2d, 102), it was sought to set aside a deed because of the lack of mental capacity in the grantor, the allegation being that he was insane at the time, and that his property was then in the hands of a guardian after an adjudication of lunacy. On the trial the proof was that the guardian once appointed for him had been discharged, and the management of his property restored to him at the time of the execution of the deed. On this showing a nonsuit was granted. This court held that this was improper, because the plaintiff was entitled to have the deed set aside upon a showing that the maker was insane at the time, and that it was not a prerequisite to recovery also to show, as alleged, that the grantor's property was at the time in the hands of a guardian appointed as aforesaid. That ruling bears an analogy to the question here raised. If a husband receives from his wife money belonging to her, which she turns over to him, not as a loan or a gift, but to hold as trustee for her, he violates his trust when he appropriates the same to his own use; and in a suit by her to bring him to account, he will be made to account to her

288 ·

therefor on proof of those facts alone, even though it be alleged and not proved that in addition to what has just been stated, he took the money under an agreement to invest and reinvest the same for her benefit.

■ It is urged in the motion for new trial that the evidence demanded a finding in favor of the plea of the statute of limitations. When the case was here on demurrer (*Allen* v. *Allen,* 196 *Ga.* 736, 27 S. E. 2d, 679), it was ruled on that subject that under the allegations of the petition the suit was not barred. Applying the ruling there made to the facts adduced on the hearing, the contention is without merit.

■ It also was urged that the verdict can not stand because the uncontradicted evidence showed that Allen purchased stock in certain mills. This contention is not borne out by the record. The defendant's own testimony as to this was contradictory, and he was the only witness who testified on the subject. Compare *Stepp* v. *Stepp,* 195 *Ga.* 595 (25 S. E. 2d, 6).

■ The verdict was supported by the evidence, and the judge did not err in refusing a new trial. Nor was the decree erroneous for any of the reasons assigned.

*Judgment affirmed. All the Justices concur.*