MEHAFFEY *et al.* v. HAMBRICK, and *vice versa.*

| 83 | 597 |
| 83 | 606 |
| 83 | 597 |
| 95 | 797 |
| 83 | 597 |
| 108 | 147 |
| 108· | 151 |

1. A report of the trial consisting of interrogative and responsive dialogue between counsel and witnesses concerning the facts, interlarded with remarks by court and counsel, is not a brief of evidence, and a decision holding it to be and approving it as a brief, will, on direct exception thereto, be reversed.
2. A judgment denying a new trial will not be reversed by the Supreme Court, as a consequence of reversing a previous decision erroneously holding that a given document filed with the motion for a new trial was a brief of the evidence. The rule in respect to incidental reversal of dependent judgments stated.

November 6, 1889.

Practice. Evidence. New trial. Before Judge RICHARD H. CLARK. Dekalb superior court. February term, 1889.

Reported in the decision.

CANDLER, THOMSON & CANDLER, for Mehaffey *et al.*

HOOPER ALEXANDER and H. C. JONES, by brief, *contra.*

BLECKLEY, Chief Justice.

Under the law applicable to this case as a whole at the present stage of it, no examination of the grounds of the motion for a new trial is needful or would be proper, for the court below should not have adjudicated upon the motion either to grant or deny it, without having before it a proper brief of evidence.

The cross-bill of exceptions presents two assignments of error, both going back behind the judgment complained of in the principal bill. These are, first, that the court erred in deciding that the report of the trial was a sufficient brief of the evidence, and thereupon approving the document as a brief; secondly, that it erred in not dismissing the motion for a new trial because there was no brief.

1. Tested by several deliverances from this bench, the report of a trial consisting in part of dialogue between counsel and witnesses concerning the facts, and in part of extraneous matter, is not a brief of the evidence. In *Mayor of Macon* v. *Harris*, 75 *Ga.* 768, the court, by JACKSON, C. J., said: "We are ignorant of any law which allows such questions and answers to be brought here or filed of record, on a motion for a new trial, or otherwise made record. It is a brief of the oral testimony that may be made record on motions for a new trial, and not the stenographer's report of questions and answers, and remarks of counsel and the court on the examination of witnesses." To the same effect are *Chambers* v. *Walker*, 80 *Ga.* 644; *Wiggins* v. *Norton* and *Tate* v. *Griffith*, 83 *Ga.* 148, 153; in the last of which we said: "Of course the testimony, pure and simple, should be admitted into the document without admixture with extraneous matter, such as remarks by court or counsel. It is not the province of the brief to report the trial, but to present a synopsis of the evidence." Let us glance now at the extraneous matter,

or some of it, for there is much more of a different sort, embodied in the so-called brief before us. Here is a collation of it:

"Mr. Candler objected to proving ownership in that way. By the court: Well, I think he can prove that he is in possession, and that he has it in his own right." page 17. "By Mr. Candler: I object to his proving that. That is not the measure of damages for the wrong they complain of here. By the court: Well, I will let the evidence in." p. 23. "By Mr. Candler: I object to that evidence. They want to know the injury done at the time this fence was removed." p. 23. "By Mr. Candler: This examination ought to be put prior to the bringing of this suit. The suit was brought in July, 1887." p. 25. "By Mr. Candler: I object to his proving damage subsequent to this. By the court: I think he may show the effect of it." p. 25. "Mr. Candler objected because there is better evidence. By the court: I think anybody may testify as to where the land lies. Mr. Candler insisted upon his objection." p. 28. "By Mr. Candler: We ask that that be excluded. He says that the notice that was given them was written. By the court: Well, as to the giving written notice is excluded." p. 31. "By Mr. Alexander: We offer this deed in evidence. . . By Mr. Candler : We have no objection to this deed." p. 45. "Mr. Alexander objected to the evidence. The witness: Colonel, you don't understand me. I would not have given that much for all of the land, in proportion. I wanted that spot there. By Mr. Candler: He has already said his land was worth as much." p. 59. "By Mr. Candler: I think that is objectionable. He can state what marks are there. By the court: If he knows the line, I think he can testify about it." p. 60. "Mr. Candler objected. No objection to showing that there was a stob there, and what sort of a stob it was,

etc. . . Mr. Candler objected. By the court: Do you mean these were the marks of original survey?" p. 61. "By Mr. Alexander: Yes sir, I want to know what was the common report. By the court: Well, I think you can prove it. . . By Mr. Candler: I don't object to his proving that there were marks on the trees, what sort they were, whether blaze or chops, and what they said in the neighborhood about when they were put there. By the court: I think Mr. Alexander can prove by this witness, or any other witness, if he knows it, the original land line made by the original survey of the State of Georgia. He knows or he does not know the original land line." p. 62. "Mr. Candler objected to the question. . . Mr. Candler insisted that the questions were leading. . . Mr. Candler renewed his objection. Objection overruled." p. 63. "Mr. Candler objected to the answer. By the court: I will let it in." p. 64. "Mr. Alexander objected to the testimony because there were no pleadings to that effect. Objection overruled." p. 86. "By Mr. Candler: We object to this evidence. Objection overruled. . . Mr. Candler renewed his objection to them, fixing this line after the injury of which they complain was done, etc." p. 100. "Mr. Candler objected. By the court: I think it is proper only for you to prove where this line ran as it respects the boundaries; that is, the boundary of the land at the point where the fence was. Mr. Alexander stated that he wanted to prove that these gentlemen ran a correct line and ran it along the old landmark, etc. By the court: Well, I think you can show that." p. 102. "Mr. Alexander tendered in evidence the motion for a new trial, designating the parts he cared for. Upon the objection of Mr. Candler, the court held that only such parts could be introduced as a foundation had been laid for. Mr. Candler urged his objection of the affidavits contained in the motion.

The court held that unless there was something in it to contradict the testimony of Mr. Johnson, it was not admissible. Mr. Alexander reads the two affidavits above mentioned." p. 135.

In *Tate* v. *Griffith* we further said: "In the oral examination of witnesses during almost any trial, many trivial and immaterial questions are asked and answered, and during a lengthy trial this worthless lumber accumulates to an enormous mass. In briefing the evidence all such stuff should be omitted." As a sample of this kind of matter, we now transcribe from the report under examination the following questions and answers: "Q. George Washington, if he was living, with his little hatchet could mark them, couldn't he? A. Yes sir, I suppose so." p. 106. "By the court: What is the name of the creek? A. Bob O'Sheely. Q. Do you know how it is spelled? A. No sir, I don't know as I ever saw it spelled." p. 163. "By the court: Did you ever eat any mulberries off that tree? A. No sir, I never ate any mulberries off of that tree in my life." p. 171. "By Mr. Alexander: Did that tree bear mulberries? A. I think it did. Q. Pretty fair eating? A. Pretty good, I think. Q. What were they worth a quart? A. We didn't sell them by the peck, quart or gallon either. We just ate all we got." p. 173. This mulberry tree was killed by the plaintiff five years before the trial, and three years before the trespass, the alleged cause of action, was committed.

We said also, in the case last cited: "In so far as the brief consisted of a mere copy of the stenographic notes after being written out in ordinary character by the reporter, it is in no proper legal sense a brief of the oral evidence; for only an abstract or abridgment of the oral testimony can rightly be considered a brief of it. . . . The substance only of the material testimony should be set out in succinct narrative form.

Questions put to witnesses should be reproduced in the brief only when necessary either to clearness or brevity, and then they should be as much abbreviated as practicable." Here the immaterial is blended with the material; every question, however verbose, is repeated at full length, and the examination of witnesses sprawls over one hundred and sixty-one pages, though the whole case involves less than that many dollars. The condensing powers of any ordinary lawyer faithfully applied to the task would serve to compress all the material testimony contained in the report within a dozen or two pages. Why, then, should the time of courts, and the money of suitors by increased costs, be taxed with the whole text, *verbatim et literatim*, of the stenographic report? Condensation is a duty no less of the bar than of the bench. Suppose the members of this court should dump into their opinions the whole contents of the records upon which they adjudicate, or the reporter of the court should state literally *all* the facts, whether material or not, with what profit or patience would the profession receive and use the Georgia Reports. The crude and shapeless materials which form the rudiments of a case should be worked into order as much as possible by the learned counsel most familiar with them; and in each stage of its progress the case should be made to throw off as much as may be of the irrelevant and immaterial baggage with which it is incumbered. Only by being freed somewhere from the *impedimenta* with which it set out can it reach the goal of justice. Such a document as we are reviewing is not a brief of evidence, nor can the decision of any court make it one except in name. Were we to pronounce it a brief, our judgment would be a legal lie. Even a solemn act of the General Assembly could not change its nature by impressing it with a new appellation, any more than it could give a family to a man by

calling him the head of a family. We venture the opinion that every member of the legal profession, without exception, who suffers himself to think candidly, knows or is capable of knowing that a literal stenographic report by question and answer, covering one hundred and sixty pages, and embracing every word of the testimony, with no discrimination of what is material or immaterial, is not a brief of evidence. No thoughtful lawyer seriously addressing his mind to the subject would any more confound the two things than he would his argument and his brief. We are not to be understood as reflecting in any degree upon our learned brother of the circuit bench, for we well know that a recent practice, fostered by the indolence of some counsel, and the overwork of others, has grown up of substituting the stenographer's report for the brief of evidence, and he but followed this practice in the present instance. His decision was doubtless the result of bad precedents, rather than the offspring of his own deliberate, independent thought. Moreover, some of the cases which we have cited above had not been ruled when his decision was made. Nor even in them is there any direct authoritative ruling upon the precise question now presented. Not heretofore, so far as we know, has the decision approving such a report as a brief of evidence been directly excepted to. Such an exception is quite distinct from a motion to dismiss the motion for a new trial. We have held that a motion to dismiss is not available, whilst the order approving the brief is intact. And so we again hold. But here the decision which resulted in the order of approval is directly assailed, and having no doubt that it was erroneous we so pronounce it. The effect of this is to render vain and valueless all the subsequent proceedings on the motion for a new trial.

2. Nevertheless, we shall not reverse the judgment

refusing a new trial, for it was right to refuse it, not for insufficiency of the grounds taken in the motion, but because these grounds were not ready for adjudication, the brief of evidence not having been duly perfected. There was material out of which to construct a brief, but it had not been constructed. The court ruled that it had been, but that was an error, and so the merits of the motion were not legally reached, nor have they yet been reached. Had a new trial been granted, that judgment would have shared the fate of the prior decision on the brief of evidence, for a dependent judgment is vacated by reversing another judgment on which it depends. *Bigby* v. *Powell,* 15 *Ga.* 91 ; *Barron* v. *Chipman,* 4 *Ga.* 202 ; Hatcher *v.* Commonwealth, 4 Metcals, 359 ; Waldron *v.* Ely, 1 Pennington, 79 ; Steelman *v.* Ackley, *Ib.* 165 ; Anderson *v.* Radley, 2 *Ib.* 1034. But so far from the failure to grant a new trial being incorrect because there was no brief of evidence, the fact that there was none renders it absolutely certain that the movants were not then entitled to have a new trial granted ; for without a brief of evidence there could be none granted legally. The court declined to order a new trial for a reason which might or might not be sustainable ; but the reason which we recognize, namely that the motion had not reached a stage at which its merits were legally examinable, is, if sound, absolutely conclusive, not indeed against the right of the movants sometime to have a new trial, but against their right to have had it granted at the time the court refused it.. There certainly was an error committed, but not the one complained of ; the error committed was in doing what the movants wanted done, namely in hearing the motion and deciding it either way ; the error of which the movants complain is that it was not decided in their favor. The rule of incidental reversal of dependent judgments, or

a branch of it, may be formulated in these terms: Where two judgments are rendered between the same parties, especially in the same case, one of which is a necessary premise or logical antecedent of the other, the reversal of the former always vacates the latter; but where this logical relation does not exist, no such available consequence follows.

*Judgment on main bill of exceptions affirmed; on cross-bill, reversed.*