## CHURCHILL vs. BEE & CO. et al.

| 66 | 621 |
| 96 | 499 |

1. Exceptions to a decree in equity bring before the supreme court the record proper to the cause, that is, the pleadings in the case and the verdict of the jury in answer to questions propounded by the court, when the case is so submitted to the jury; and the writ of error will not be dismissed because the bill of exceptions does not contain or exhibit the testimony in the cause.

2. The decree should follow the verdict so far as facts are stated on the issues presented by the questions propounded, and the decree should be based thereon in connection with the facts admitted in the pleadings; but deductions of law, if made by the jury, will be disregarded by the chancellor, who will, from the whole of the facts found and admitted, deduce and apply the law, and so frame the decree.

3. Where a testator bequeathed his entire estate to his widow and only son, and appointed them the executors of his will, and the widow alone accepted the trust and qualified, and as executrix as well as individually, sold a part of the realty, making a deed thereto, with warranty in both capacities, she will be held not entitled to dower in such realty so conveyed and warranted.

4. Where, in like manner, she sold another portion of the realty and bought it herself at a certain price, and paid the son a portion of the price, and mortgaged the property to the son to secure him in the remainder of his half of the purchase money, she will also be held to have elected to take under the will and not to be entitled to dower in the land so conveyed and mortgaged.

5. The entire property left by the testator is a trust fund for the payment of his debts, and the executor is the trustee faithfully to see it applied to that object, and if the widow be the executrix, that fact does not absolve her from the obligation of so applying the fund. While the fact that she is executrix will not impair any right to dower which she may possess, yet acts of hers as executrix in so disposing of the realty as not to consist at all with the exercise of that right should be construed to manifest her election to take under the will in lieu of dower; nor will she be permitted to set up her ignorance of the condition of an estate which she obligated herself to administer, or of her right to dower therein, to show that such election was not made freely and knowingly.

6. Whilst a court of equity, when it lays its hands on an estate, may finally administer it and should make a final decree thereon, yet if in consequences of priorities not fully exhibited in the pleadings

and verdict, the chancellor sees fit, to remand the details of those matters to be adjusted by the administrator with the will annexed under the supervision of the court of ordinary, this court will not interfere, especially where the ends of justice would seem to be advanced thereby, and more especially where counsel for plaintiff in error does not insist here on this point made in his bill of exceptions.

7. The widow, before she can claim the payment of the sum set apart as a year's support, must account for funds of the estate in her hands, and if she has paid debts of the estate therewith as executrix, it should appear that these debts were of such dignity as to be prior to the claims of the creditors in the pending cause.

8. The amount of fees of counsel for bringing the money into court should be fixed by the jury on proof of the value of the service, and the chancellor on their verdict should decree the payment thereof; but where the chancellor has decreed them without such verdict, and the amount is reasonable, this court will not set aside that decree, especially where the counsel for plaintiff in error declines to press this point here, though made in the bill of exceptions.

William C. Bee & Co. filed their bill 2nd March, 1877, against Martha W. Williams (now Martha W. Churchill), the widow and executrix of Mortimer H. Williams, Sen., alleging, in brief, as follows:

Mortimer H. Williams, Sen., on 28th October, 1874, purchased of John T. Blacklock the eastern one-third of a lot of land in Savannah, known as "the Johnson wharf property," giving his note for part of the purchase money for five thousand dollars, with interest at 10 per cent., one half payable in one and the other in two years, and secured the same by a mortgage on said land, which notes and mortgage Blacklock assigned, before due, to complainants.

Williams made a will 8th February, 1875, dividing his property equally between his wife, the said Martha W. Williams, and his son, Mortimer H. Williams, Jr., whom he made his executors, and who were his sole heirs at law. He died, and the will was probated March 10th, 1875, and the widow, said Martha W., qualified alone as executrix.

She caused lot of land 29, in Troup ward, to be sold at public outcry, and, with the consent of her co-legatee, bid it in for herself, and so conveyed it for $7,000.00.

The said Martha W. and Mortimer H., Jr., 12th April 1875, for $7,500.00, conveyed the said Johnson wharf property to James F. Brown, who assumed the payment of the said notes and mortgage. There was no property with which to pay complainants' claim except lot 29, Troup ward. Complainants foreclosed their mortgage on the Johnson wharf property December 1st, 1876, had it sold by the sheriff, and bid it off·for themselves at $2,-600.00, first Tuesday in February, 1877, and took the sheriff's deed to William C. Bee. The said notes were entitled to a credit of $2,600.00, less the cost of foreclosure and expenses of sale, and the estate of Mortimer H. Williams, Sen., is liable for the balance. The executrix never caused an inventory and return of the property of the estate to be made.

The prayer was for the appointment of a receiver to take charge of lot 29, Troup ward; that the conveyance to it be declared null, and the lot be declared a trust fund for payment of complainants' claim. The court appointed the receiver on the filing of the bill.

The bill was amended on July 12th, 1877, alleging that the said Martha W. had applied for dower in lot 29, and in the Johnson wharf property, and praying that she·be required to contend for her dower in this proceeding and not elsewhere. Complainants claim that she was not entitled to dower, as·the several acts of hers in conveying the property amounted to an election not to take dower.

Mortimer H. Williams, Jr., had died, and Alice J. Williams, his widow and executrix, was proceeding to foreclose the mortgage made by Martha W. Williams to Mortimer H., Jr., at the time of the sale to herself of lot 29 for his half interest in same. Martha W. Williams had married Churchill since the filing of the bill, and Henry C. Cunningham had been made administrator with the will annexed in her place.

Henry C. Cunningham, administrator, and Alice J. Williams, executrix, were made parties. Cunningham, administrator, answered that he had no knowledge of the facts, and submitted them to the court.

Martha W. Churchill (Williams) answered, in brief, as follows : She admitted the facts of the bill as to the will of Williams, his death, and her qualification as executrix, and alleged that she knew nothing of the notes and mortgage but from hearsay ; she was ignorant of business, and suffered Mortimer H. Williams, Jr., to manage for her ; she was informed and believed that the condition of the estate was such as to pay off all the debts from the notes and accounts of the mercantile business, in which testator was engaged, without resort to the real estate ; if she did any act which might be construed into an election not to take dower, it was done in ignorance of the condition of the estate; and as to claim of complainants, she was informed that this could not come against the estate further than as to the mortgaged property, and that complainants had released the estate except as to that; she was ignorant of her right to claim dower until after the filing of complainants' bill. The sale of lot 29, Troup ward, was made under the belief that all the debts had been amply provided for ; she had given Mortimer H., Jr., under his representation that there were no debts to come against the estate, a mortgage on lot 29 for his one-half interest in said lot ; she never supposed an inventory was necessary so far as the creditors were concerned ; all of the debts have been settled except one or two hundred dollars, and these would have been but for the summary and stringent proceedings of complainants ; she has advanced of her own private means $567.80 to pay debts of estate, and she has not received from rents of lot 29 more than $100.00 ; she has not squandered the assets of the estate, nor applied them to her use ; complainant foreclosed his mortgage and forced the property to sale without notice to her, and purchased it for less than its value ; it was worth more than

the debt; she does not know if the foreclosure proceedings were legal, and demands strict proof thereof; between Mortimer H. Williams, Jr., and complainants she is left nothing, after having advanced her private means for the estate and to him; she applied for dower to save something, if possible, from the estate, and obtained from the ordinary his consent to take money in lieu of dower, to be hers absolutely; the estate owes her $900.00, set apart to her for her year's support, and she submits the question of dower and all others to the court for final adjustment.

· The case was submitted to the jury on question, which, with the answers of the jury, were as follows:

Q. What was the full amount of the notes made by M. H. Williams, Sen., if any, payable to John F. Blacklock or order, and indorsed by him to the complainants, William C. Bee & Co.? Ans. Five thousand dollars, bearing 9 per cent. interest per annum.

Q. When did M. H. Williams, Sr., die? Did he leave a will? To whom did he leave his property by said will? Whom did he appoint his executor and executrix? Ans. March, 1875. Left a will dividing his property equally between widow and son. Appointed his widow and son executrix and executor.

Q. Who qualified as executrix of his will, and when? Ans. Mrs. Martha H. Williams, in March, 1875.

Q. Did his executrix cause any inventory or appraisement of his estate to be made? Ans. No.

Q. Did she make or file any returns as executrix in the court of ordinary? Ans. No.

Q. Did she receive a widow's support for twelve months succeeding her husband's death, and if yes, what amount? Ans. Nine hundred dollars was set apart for her year's support.

Q. Did she or not appoint or have any agent to attend to her duties as executrix, and if yes, who was such agent or agents? Ans. Yes; Lambert and J. W. McIntire.

Q. Did such agent or agents collect or receive from the rental of her husband's real estate, or through the collection of outstanding accounts, notes, etc., after his death, any sum or sums of money, and if yes, what amounts? Ans. Yes; $140.06 for rent and $29.05 outstanding accounts.

Q. What real estate belonged to M. H. Williams, Sen., at the time

of his death? Ans. Nos. 29 and 30, Troup ward, and Johnson's wharf lot.

Q. Was lot 29, Troup ward, city of Savannah, with the improvements, sold by Mrs. Williams, as executrix, and if yes, when, at what price, and to whom? Ans. Sold April 12th, 1875, to herself. No money paid to her.

Q. Was lot 30, Troup ward, sold by Mrs. Williams, and if yes, when, in what capacity, to whom, and for what price? Ans. Sold April 13th, to J. J. Dale & Co. for $1,000.00.

Q. Was the property known as the Johnson wharf property sold by Mrs. Williams, and if yes. when, to whom, and for what price? Did she sell it in her individual as well as in her fiduciary capacity? Did she warrant the titles? Ans. Sold April 12th, 1875, to James F, Brown; sold as executrix, and liens and titles warranted.

Q. Did William C. Bee & Co. control a mortgage given by M. H. Williams, Sen., to secure the notes made by him? Was this mortgage foreclosed, and when was the rule absolute granted? Ans. They did. It was. Rule absolute December term, 1876.

Q. Was the property covered by said mortgage sold under the decree of foreclosure, and on what and for what amount? Ans. Yes; 6th February, 1877, for $2,600.00.

Q. Who bought said property under said foreclosure, and for what sum? Ans. William C. Bee; $2,600.00.

Q. Did William C. Bee & Co. pay the sheriff the ordinary fees and commissions on foreclosure and the bill of costs, and if yes, what did those amount to? Ans. Yes; $329.00.

Q. What was the value of lot 29, Troup ward, and the improvements, at the time of the death of M. H. Williams, Sen.? What is the present value? Ans. Value at time of death, $6,500.00; present value, $5,000.00.

Q. What was the value of the Johnson wharf property at the death of M. H. Williams, Sen.? Ans. $7,000.00.

Q. What is the present value? Ans. $4,500.00.

Q. At the time of the sale of lots 29 and 30, Troup ward, and of the Johnson wharf property, by Mrs. Williams, was the estate of M. H. Williams, Sen., indebted, or had all his debts been paid? Ans. It was; they were not.

Q. Did Mrs. Williams execute a mortgage on lot 29, Troup ward, to M. H. Williams, Jr., and if yes, at what date, and to secure what amount? Ans. She did; April 8th, 1875; about $1,900.00.

Q. Was the estate of M. H. Williams, Sen., indebted at that time? Ans. It was.

Q. Did Mrs. Williams apply any of her own private funds to the

payment of her husband's debts, and if yes, what amount? Ans. Yes. $567.00.

Q. Did Mrs. Williams receive a piano or any other personal property, which belonged to her husband, after his death? What was the value of such piano or personal property? Ans. Yes, she received a piano; do not know its value.

Q. Did the mortgage given by Mrs. Williams to M. H. Williams, Jr., represent a real indebtedness from her to him, or a supposed indebtedness, based upon the plea that she and said Williams were each to get one-half of testator's property? Ans. It was based on the property being equally divided.

Q. Were the rights of creditors of M. H. Williams, Sen., considered in said transaction? Ans. They were not.

Q. If the court should hold that Mrs. Williams is at law entitled to dower in the Johnson wharf property, what was the fair market value of said property at the time of her husband's death, in 1875? Ans. $7,000.00.

Q. What is the present fair market value? Ans. $4,500.00.

Q. If she is entitled to one-third of the said property for her life as dower, and she elects to take a sum of money absolutely in place of her dower, to what proportion of the value of said property less than one-third is she entitled to? Ans. $1,020.00.

Q. If the court should hold that Mrs. Williams is entitled to dower in lot and improvements 29, Troup ward, what was the fair market value of said property at the time of her husband's death, in 1875? Ans. $6,500.00.

Q. What is its present fair market value? Ans. $5,000.00.

Q. If she is entitled to one-third of said property for her life as dower, and she elects to take a sum in money absolutely in place of her dower, to what proportion of the value of said property, less than one-third, is she entitled? Ans. $875.00.

Q. If lot and improvements, 29 Troup ward, cannot be divided in kind so as to give her such dower, or sum of money in lieu of dower as she may be legally entitled to, shall said property be sold at such time and place and in such manner as the court may decree? Ans. Yes.

Q. Are there any debts and liabilities of said estate unsatisfied? Ans. There are.

Q. Who is the legal representative of said estate, and when did he become so? Ans. Henry C. Cunningham; 17th August, 1878.

Q. How much did J. J. Dale & Co. pay as the purchase money of lot 30, Troup ward? Ans. $1,000,00.

Q. How much did James F. Brown pay as purchase money for the

Johnson wharf lot property?  Ans.  He paid no money, but assumed the mortgage.

Q.  Did the creditor, Bee, bid in the Johnson wharf lot property at the sale under the mortgage *fi. fa.*, under the advice of counsel and in the belief that he was getting a good and unincumbered title?  Ans. He did.

Q. If the jury find that Mrs. Williams made her election between her dower and the one-half share of her husband's estate under his will, in ignorance of the condition of the estate or of any fact material to her interest, state particularly of what facts or of what conditions of said estate she was so ignorant?  Ans.  We cannot find she so elected.

Q.  What amount is due to Armel & Co., Pinney & Johnson, and Rawlins & Dorsey, creditors of the estate of M. H. Williams, according to the statement of the answer of Henry C. Cunningham, administrator?  Ans.  To D. Armel & Co., $209.72; to Pinney & Johnson, $77.88; to Rawlins & Dorsey, $399.82.

Q.  Was the executrix, Mrs. M. H. Williams, notified by the sheriff, by written notice to her, of his levy upon the wharf property under the execution of foreclosure, and was the purchaser or his attorney cognizant of this, and were the complainants or their attorney aware of it before or after the sale at public outcry?  Ans.  She was not; they were aware of it before sale.

Q.  What sum of money shall be assigned to Mrs. Martha W. Williams for her dower, to be hers absolutely, if entitled to dower?  Ans. $1,895.00.

Q.  What portion of the said sum allowed in lieu of dower shall be upon lot number twenty-nine (29), Troup ward, and what on the wharf property?  Ans. $875.00 on lot 29, Troup ward; $1,020.00 on Johnson wharf property.

Q.  Has any amount been set apart to Mrs. Williams by the ordinary for a year's support, and what amount?  Ans.  Yes; $900.00 was set apart.

Q.  What amount is still due, upon the said year's support, to the said defendant, Martha W. Williams?  Ans. $900.00 still due.

Q.  What amount of her own money has she expended for the benefit of the estate?  Ans. $567.00.

Q. If the defendant, Mrs. Martha W. Williams, has done any act which may be construed as an election to take under the will a child's part in place of dower, was she at the time ignorant of her right to dower, or of the true condition of the estate, or was she ignorant of both?  Ans.  We do not find that she did any such acts.

Q. If the jury find that Mrs. Williams made her election between

her dower and her one-half share of her husband's estate under his will, state particularly what acts she did upon which you find she made an election? Ans. We cannot find she so elected.

Q. Was Mrs. Martha W. Williams the wife of Mortimer H. Williams, Sen., at the time of his death, and did he die seized and possessed of lots 29, Troup ward, and one third of wharf lot, known as Johnson wharf property? Ans. Yes.

### On this finding the court entered the following decree:

"And thereupon, it is adjudged, ordered and decreed, that the estate of Mortimer H. Williams, Sen., is justly indebted as follows: To William C. Bee & Co., on promissory notes, the principal sum of five thousand dollars, with interest thereon from October 28th, 1874, at the rate of 9 per centum per annum until paid, subject to a credit of $2,-271.00 as of the date of February 6th, 1877, and on open account to D. Armel & Co., $209.72, to Pinney & Johnson, $77.88, and to Rawlins & Dorsey, $397.82; that the property of the estate of said Williams constitutes a trust fund in the hands of the administrator of said estate for the payment of said indebtedness, and of any other debts which may be legally established against the same, and that said property is not subject to any claim of dower on the part of said Martha W. Churchill, the widow of testator; that the sale of the Johnson wharf property, under foreclosure of mortgage, by the sheriff of Chatham county, was a legal and valid sale, and that good and valid title was thereby conveyed to the purchasers at said judicial sale, William C. Bee & Co.

That the sale of lot 29, Troup ward, and the purchase of said property by said Martha W. Williams—now Churchill—was void as against the creditors of testator's estate, but was valid to pass her right to dower therein; that the deed to said Martha W. be and is hereby cancelled and declared null as against such creditors, and the title vested in Henry C. Cunningham, administrator *de bonis non cum testamento annexo*, and his successors in office.

That the receivership of Paul Decker is hereby vacated, and that said receiver do account to and with said administrator; that the said property be turned over and delivered to said administrator who shall proceed to administer and sell the same under the direction of the court of ordinary, and after paying to George A. Mercer, Esq., solicitor for complainants in creditors' bill, ten per centum upon the amount of proceeds of such sale, and the costs of court, shall dispose of the balance of said proceeds in accordance with the terms of the decree."

To this decree the defendant (Mrs. Churchill) excepted on the following grounds:

(1). Because the judge did not cover all of the issues by the decree as found by the jury.

(2). Because the decree is not in accordance with the finding of the jury.

(3). Because the judge decreed that the estate of Mortimer H. Williams, Sr., is indebted to complainants $5,000.00, with interest at 9 per cent. from 28th October, 1874, subject to credit of $2,271.00, as of date of February 6th, 1877.

(4). Because the judge decreed that the property of the estate of said Williams should constitute a trust fund in the hands of the administrator for the payment of the indebtedness found by verdict, and of any other debts which may legally be established against it.

(5) Because the judge decreed that the said property is not subject to the claim of dower of the said Martha W.

(6). Because the judge decreed that the sale of the Johnson wharf property was a good and valid sale, and that good titles were made to complainants; that the sale of lot 29, Troup ward, and the purchase of said lot by said Martha W. was void as against the creditors of testator, but was valid to pass her right to dower therein; that the deed to said Martha W. be, and is hereby, canceled and declared null and void as against such creditors, and the title vested in Henry C. Cunningham, administrator *de bonis non cum testamento annexo*, and his successors in office.

(7). Because the judge decreed that said property be turned over to said administrator, who shall proceed to sell the same under the direction of the court of ordinary, and after paying to George A. Mercer, solicitor for complainants in creditor's bill, ten per cent. upon the amount of proceeds of sale, etc.

(8). Because the judge did not make decree providing for the payment of the amount allowed to the said widow for year's support, although requested so to do.

(9). Because the judge did not in the decree make provision for the reimbursement to the said Martha W. for the moneys advanced by her while executrix for the payment of debts of the estate.

(10). Because the judge did not by the decree provide for the final disposal of all the issues and questions as found by the jury, without sending the matter to the court of ordinary to be disposed of.

(11). Because the judge failed and refused to make provision by the decree for the dower claim of the said Martha W.

No evidence was incorporated in the record, and when the case was called in the supreme court counsel for defendant in error moved to dismiss the case on the ground that the record was defective. The motion was overruled for the reasons assigned in the first division of the decision.

LESTER & RAVENEL, for plaintiff in error.

GEORGE A. MERCER; J. R. SAUSSY; P. W. MELDRIM, for defendants.

JACKSON, Chief Justice.

1. The motion to dismiss the bill of exceptions is not granted. The decree of the court, not the verdict of the jury, is excepted to. The verdict is not complained of, and no motion for a new trial by jury is asked for. In cases like this, where the decree on the verdict is alone excepted to, it is not necessary to bring the testimony here, but the pleading and verdict and decree are the only matters needed to elucidate the errors complained of. The writ of error thus founded on errors of the chancellor in framing the decree will not be dismissed for want of the testimony before the jury; for the verdict not being assailed is the undisputed truth of the case.

2. There can be no question but that the decree should

follow the verdict as respects all matters of fact submitted to the jury, but matters of law are for the court. It was right therefore for the chancellor to disregard any deductions of law made by the jury. Certain points and questions of fact were put to them, and on their answers as to facts so submitted by interrogatories and admitted in the pleadings to be true, the chancellor will deduce the law of the case, without regard to what the jury may think is law and insert in such a verdict.

3. In regard to the lands which the widow sold individually as well as as executrix, she being sole executrix, her son not qualifying, she is precluded from taking dower therein. She passed the title out of the estate as executrix, and perfected it so far as her claims of every sort are concerned by making also her own individual deeds to that property. These acts estop her from claim of dower therein.

4. So far as the other realty is concerned, it seems from the facts that she sold it, bought it herself, paid her son part of his half, and mortgaged the property to him to secure the payment of the remainder of his share. These facts show that she elected to take under the will of her husband, and not to claim dower in these lands also, and the court below decreed accordingly, and in our judgment decreed correctly.

5. Where a widow acts ignorantly of facts in making an election not to take dower, generally she will not be held to such an election, because she has not chosen in the light and could not see what she was doing. And the mere fact that she executed the will, will not impair the exercise of such choice, but if in executing it she does acts, and involves third persons in so acting, which do not at all consist with her claim of dower, if she sells and mortgages it and treats it as assets, such acts should be construed to manifest her election to take under the will, and to exclude the right to dower in such property. Nor can she, in such a case, set up ignorance of the facts; she

was bound to know the facts.   The entire property of the
testator is bound for his debts, the whole is assets, a trust
fund to pay debts, and she is the trustee to apply the fund
to the creditors' debts.   The fact that she is executrix
does not make her less such a trustee and liable as such,
and it would be strange if a trustee should be ignorant of
the condition of the fund, and be permitted to plead that
ignorance as a reason why the fund or part of it should be
decreed to be her own property under a title adverse to
that which she received the property under, and which she
recognized as trust property.

The ruling and decree of the chancellor accords with
these views, and are approved.

6. It was not pressed upon this court that the chan-
cellor erred in not finally closing up this estate and ren-
dering a final decree.   The point is in the bill of excep-
tions, but was not insisted on.   The ends of justice, in this
particular case, perhaps, can be better reached by the course
pursued by the court below in ordering the administrator
with the will annexed to complete his administration in
and under the direction of the ordinary.   Some of the
priorities of the creditors and other details are not fully
covered by the verdict and decree, and while we hold that
a court of equity may finally dispose of an estate whenever
it takes jurisdiction of it, and should do so in all ordinary
cases to save expense, yet, in this case, for the above rea-
son, and because the point is virtually withdrawn, this
court will not interfere.

7. Before the widow on settlement can claim her year's
support out of the funds now on hand, she must account
for that which she herself administered, and satisfy the
court that the claims she paid to creditors (if any were
paid) were of higher dignity than the debts of creditors
in the case now pending.

8. The point in regard to the counsel fees is not pressed.
The jury should fix their value on proof, and the chancel-
lor follow that verdict and decree that sum; but the

amount fixed by him is reasonable and will not be interfered with, especially as the counsel for plaintiff in error does not urge the point.

The first, second and third grounds of exceptions were withdrawn.

Judgment affirmed.