## Richmond.

92   245
f108  861

EFFINGER'S EXECUTRIX V. KENNEY, TRUSTEE, AND OTHERS.

### NOVEMBER 21, 1895.

1. CHANCERY PRACTICE—*Reversal of Decree Fixing Amount of Debt and Directing Sale of Land—Payments on Judgment Reversed.*—Where a decree which fixes the amount of a debt, and directs the sale of real estate unless the debt is paid, is reversed on appeal because the amount of the debt is not properly ascertained, this of necessity sets aside the sale, if one has been made, and reverses the decree directing the sale. The trial court should then proceed to ascertain the amount of the debt in accordance with the mandate of the appellate court, if any; and, if none, should proceed *de novo*, allowing all proper credits. If payments have been made on a judgment which has been reversed, they should be credited on the debt on which the judgment was rendered.

2. CHANCERY PRACTICE—*Purchaser at Judicial Sale—Decree Reversed on Appeal—Rights and Liabilities of Purchaser.*—A purchaser at a judicial sale, who has purchased in good faith, under a decree of a court of competent jurisdiction, which decree was afterwards reversed, is entitled to be repaid his purchase money, as far as it has been paid, and to be reimbursed for permanent improvements made upon the property which have added to its value, and must account for rents and profits. Commercial fertilizers cannot be regarded as permanent improvements, and clay used for making bricks should not be charged as minerals. The clay should be charged as damage done to the land by digging and removing it therefrom.

3. CHANCERY PRACTICE—*Claiming Under and Against a Trust.*—Parties who claim under a trust, and come in and prove their debts, and receive a part of the trust fund, will not be allowed afterwards to repudiate their action and claim against the trust.

Argued at Staunton.    Decided at Richmond.

Appeal from a decree of the Circuit Court of Rockingham

county, pronounced November 2, 1891, in three chancery suits heard together, in one of which James Kenney, trustee, was the complainant, and in the other two Jesse Ralston's administrator was the complainant, and in each of which the appellants were defendants.

*Decree modified.*

The opinion states the case.

*John E. Roller*, for the appellants.

*William B. Compton*, for the appellee, James Kenney, trustee.

*John T. Harris, Jr.*, for the appellee, William C. Morgan's administrator.

*Strayer & Liggett*, for the appellee, William Billhimer.

BUCHANAN, J., delivered the opinion of the court.

The question raised by the first exception made by J. P. Effinger's executrix to the report of Commissioner Jones, dated September 25, 1891, is that the Circuit Court erred in refusing to give her testator's estate credit for the sum of $424.06 paid August 24, 1867, and for the like sum of $424.06 paid January 1, 1868, on the debt due from his estate to Kenney, trustee.

Kenney, as trustee of A. C. Bryan, sold, on the 30th day of March, 1863, a parcel of land to J. P. Effinger at the price of $21,203.12. The purchaser paid two-thirds of the purchase price in cash, and executed his bond as of that date, payable in two years, with interest from date, for the residue, viz., $7,067.70. In the year 1866, Kenney, trustee, recovered judg-

ment in the County Court of Rockingham county for the full amount of that bond, with interest thereon from March 30, 1863. The Circuit Court of that county affirmed that judgment, but, upon a writ of error to this court, both judgments were reversed, and a new trial awarded. Before the reversal, however, of these judgments, Effinger had been compelled to pay two years' interest upon that judgment under the act of Assembly of March 2, 1866, entitled "An act to stay the collection of debts for a limited period." Secs. 4 and 5, Acts of 1865–6, page 182.

After the case went back from this court to the County Court for a new trial, the plaintiff, Kenney, trustee, dismissed his action, and filed his bill in the Circuit Court for that county for the purpose of subjecting the land sold by him to Effinger for the payment of the residue of its purchase price, evidenced by the bond referred to above. Upon the hearing of that cause the Circuit Court was of opinion that the value of the land at the time it was sold was a more equitable measure of recovery than the scaled value of the Confederate money, with reference to which the bond was executed, and entered a decree November 29, 1878, for the sum of $2,692.33, with interest thereon from March 30, 1865, till paid, and appointed commissioners to sell the land therefor, unless the debt was paid within a specified time.

Upon appeal by Effinger, that decree was affirmed by this court. A sale was made of the land under that decree, to the confirmation of which Effinger excepted; but his exceptions were overruled, and the sale confirmed. The decree confirming the sale was appealed from, and it was also affirmed by this court.

In the meantime Effinger had taken an appeal to the Supreme Court of the United States from the decree of this court which affirmed the said decree of the Circuit Court of November 29, 1878. Upon a hearing, that decree was

reversed by the Supreme Court of the United States, upon the ground that the act of Assembly of February 28, 1867, in reference to suits on Confederate contracts, was unconstitutional in so far as it authorized the value of the property sold to be considered by the court or jury in ascertaining the just measure of recovery in suits upon such contracts; and that Kenney, trustee, only had the right to recover the "exchangeable value of Confederate notes, in which the land was payable, estimated at the time and place of its execution, in lawful money of the United States."

When the mandate of the Supreme Court was sent to this court, it entered a decree on September 16th, in the year 1886, reversing its decree from which the appeal to the Supreme Court had been taken, and also the decree of the Circuit Court of November 29, 1878, from which the appeal to this court had been taken, and remanded the cause to the Circuit Court, to be proceeded with in conformity to the opinion of the Supreme Court of the United States.

The Circuit Court, at its October term, 1886, proceeded to execute the mandate of the Supreme Court, and directed an account to be taken by one of its commissioners to ascertain, amongst other things, "the amount of the debt due from J. P. Effinger to the complainant, James Kenney, trustee, on the bond sued on, which shall be ascertained by scaling or reducing said bond to its true value on the 30th day of March, 1863, as directed by the Supreme Court of the United States, and charging interest thereon from March 30, 1865, according to the rule adopted by this court in its decree of November 29, 1878, and allowing Effinger credit for any payments, or proper set-offs, acquired since the decree of November 29, 1878, including any costs he may have recovered against said complainant."

The construction placed upon the decree of this court, reversing the decree of the Circuit Court of November 29,

1878, we think, was erroneous. That decree of the Circuit Court was reversed and set aside, not in part, but *in toto.* Not only does the language of the decree itself show this, but the character of the decree of November 29, 1878, forbids any other construction. That decree fixed the amount which, in the opinion of the court, Kenney, trustee, was entitled to recover from Effinger on the bond for $7,067.70; appointed commissioners, and directed them to sell the land to satisfy the amount so decreed, unless it was paid within a specified time. When that portion of the decree was reversed which ascertained the amount of the debt for which the land was directed to be sold, the residue of the decree was necessarily reversed also. If not, there would have been a decree for the sale of the property upon the failure of the debtor to pay, when he did not know what he was required to pay, and when the commissioners did not know for what sum they were to sell.

When that decree was reversed, and the cause remanded to the Circuit Court, there was to be " a new trial," in the language of the Supreme Court, in accordance with its views. Upon that new trial the defendant, Effinger, had the right to make defence as if there had never been a trial of the case, provided such defence was not in conflict with the mandate of the Supreme Court.

The two sums of $424.06 each, having been paid upon a judgment which was afterwards reversed, Effinger had the right to have them credited upon the scaled value of the bond sued on. The Circuit Court erred in not directing this to be done, and also erred in fixing the time from which the debt should bear interest. The bond, by its terms, bore interest from March 30, 1863, and the court should have so decreed, instead of decreeing interest from March 30, 1865.

It is also insisted that the Circuit Court erred in overruling the appellant's second exception to the commissioner's report, which was as follows:

" Because the commissioner erred in settling between J. P. Effinger and William M. Billhimer, the purchaser, upon the eviction of said purchaser, in refusing to adopt the rule in *Click* v. *Green and Sadler*, 77 Va., and *Threlkeld* v. *Fitzhugh*, 2 Leigh—*i. e.*, that as long as the purchaser received to his own use the rents and profits of said land, they stood in stead of interest."

The commissioner stated his account upon this subject in the manner directed by the decree of the court under which he was acting.    That decree declared that, inasmuch as Billhimer purchased in good faith under the decree of a court of competent jurisdiction (which decree was afterwards reversed), he should be repaid his purchase money as far as it had been paid, and that he should account for rents and profits, and be entitled to credit for permanent improvements made upon the property which have added to its value."    We are of opinion that the cases of *Click* v. *Green and Sadler* and *Threlkeld* v. *Fitzhugh* have no application to cases of this kind, and that the court correctly stated the law applicable to the case, and adopted the proper method for settling the account.    *Wood's Ex'or* v. *Krebbs*, 33 Gratt. 685.

It is also claimed that the commissioner and the court erred in allowing Billhimer, the purchaser, credit for the following items as permanent improvements to the land, to-wit: $235 for fertilizers ; $289.49 for fencing ; and $175 for an addition made to the house; and for failing to charge him with the value of the clay taken from the land for the purpose of making brick.

There was error, we think, in allowing the credit of $235, half the costs of the commercial fertilizer used upon the land. Such fertilizer being for the special benefit of the crop with which it is used, cannot be regarded as a permanent improvement to the land, and that item ought not to have been allowed as a credit.

The proof as to the value and character of the fencing done and of the addition made to the house is not very satisfactory, but, as the commissioner who saw the witnesses has fixed the value of those improvements from their conflicting and unsatisfactory statements, and his action has been approved by the Circuit Court, we cannot say that his report is not sustained by the evidence. The assignment of error as to the action of the court upon these items cannot therefore be sustained.

The claim that the clay removed from the land for the purpose of making brick should have been accounted for as mineral, and not as damage done to the land by digging and removing it therefrom, cannot be sustained. The evidence taken by Effinger upon this matter, including his own, was to show the injury or damage done to the property as a whole, and not for the purpose of showing the value of the clay removed for making brick. The commissioner's report is sustained by the evidence, and the Circuit Court properly overruled the appellant's exception to this item.

The action of the Circuit Court in overruling the exceptions of J. P. Janney, administrator of W. C. Morgan, surviving partner of Morgan, Buck & Co., to the commissioner's report, was proper. That judgment was obtained prior to the deed of trust from Bryan to Kenney, trustee, and the judgment creditors might, if they had not come into these causes and proved their debt, have proceeded against the lands upon which their judgment was a lien. But having come into these causes, and received part of their judgment out of the funds in the hands of the trustee in that deed of trust, they will not be allowed now to repudiate their action in claiming under the trust, and claim against it. They made their election and must abide by it.

The decree complained of must be so modified that the debt due the estate of J. P. Effinger will bear interest from

March 30, 1863, instead of from March 30, 1865, and that there shall be credited thereon the sum of $424.06 as of August 24, 1867, and the like sum of $424.06 as of January 1, 1868, in addition to the credits allowed in the said report of the commissioner. It must also be so modified that the item of $235, allowed William M. Billhimer for fertilizer, be disallowed. In other respects the decree appealed from must be affirmed, except in so far as changes are rendered necessary by the modifications herein ordered. The cause will be remanded to the Circuit Court, with direction to modify the decree appealed from as hereinbefore directed.

*Decree modified.*