### J. A. PRITCHARD ET AL. v. D. E. WILLIAMS.

(Filed 9 March, 1921.)

**1. Betterments—Evidence—Estates.**

When the unsuccessful defendant in an action of ejectment may recover as betterments for improving farm lands in which he had a life estate only, it is competent for him to show that the land had been depleted and remained idle for a period of time, and by his expenditures in a systematic plan of unusual fertilizing, clearing the lands of trees, ditching, building of fences, etc., with a *bona fide* and reasonable belief that he owned the fee, he had brought the land to a high state of cultivation; and it is for the jury to determine whether the land had been substantially and permanently improved thereby, and if so, the added value. C. S., 701.

**2. Same—Questions for Jury—Trials.**

Where it has been judicially determined, in an action of ejectment, that the defendant is entitled to recover for betterments placed thereon, while *bona fide* believing that he was the owner of the fee, when he was, in fact, a tenant for life, the wishes of the remainderman as to the kind or nature of the improvements, or whether they will be useful to him, is immaterial, the question for the jury to determine upon the evidence being the value of such improvements as were permanent and substantially increased the value of the land, not exceeding the cost.

APPEAL by both parties from *Calvert, J.,* at November Term, 1920, of CAMDEN.

This was an action in ejectment, in which the plaintiff recovered, 175 N. C., 319. A petition was filed for betterments, and in the same case, 176 N. C., 108, the Court held (by *Brown, J.,* for a unanimous Court) that the petitioner (the defendant) was entitled to recover the same. Upon rehearing, 178 N. C., 444, this judgment was reaffirmed. This is an appeal from the verdict and judgment upon the issues submitted, the only points presented being exceptions to the charge on the third issue as to the value of the betterments. Both parties assigned error and appealed.

*Meekins & McMullan and D. H. Tillett for plaintiffs.*
*R. C. Dozier, W. I. Halstead, Aydlett & Simpson, and Ehringhaus & Small for defendant.*

### PLAINTIFF'S APPEAL.

CLARK, C. J. The court charged that the term "permanent improvements" includes "all improvements of a permanent nature, and which substantially enhanced the value of the property in controversy." The court charged further (the property being a farm) that "putting up dwelling-house or tenant houses, barns and stables, and other out-buildings, and any substantial improvements which might be made to those buildings, the necessary ditching and necessary or proper fencing, the digging of a well or planting of orchards, and cutting the timber in the course of clearing for cultivation, the grubbing of stumps, bushes and reed patches necessary to clear and break the land for planting and cultivation were permanent improvements on such property within the meaning of the statute," adding, however, "that it was for the jury to determine whether or not such improvements, if the jury should find that any were made, enchanced the value of the property, and if so how much, and while the jury should consider substantial additions or improvements to the buildings if made, they should not consider repairs to such buildings which should be made by the owner in the ordinary use of such property." He further charged that ditching (embraced in the plaintiff's first exception), wire fencing (second exception), lightning rods (third exception), dwelling-house, tenant houses, barns and stables, the digging of a well, and the planting of orchards, and the like were permanent improvements only if they substantially enhanced the value of the property. In these instructions we find no error.

The plaintiff's fourth and fifth exceptions were to the refusal of prayers to instruct the jury, which were based upon the idea that since under the terms of the trust established in the main cause, 175 N. C., 319, the plaintiff was decreed to be the owner of the life estate, he occupied the position of a life tenant with respect to the improvements made by him. But he was not an ordinary life tenant within the meaning of the principle that life tenants cannot recover for betterments which were placed thereon with the knowledge of that fact. The defendant made the improvements, as the jury find, under a *bona fide* belief that he was the owner in fee simple, and the court decided that the plaintiff was entitled to have the issue thereon submitted, 176 N. C., 108, by a unanimous Court, and this was reaffirmed on rehearing, 178 N. C., 444. The plaintiff's prayers were therefore properly refused.

Exceptions 6 and 7 to the refusal of prayers cannot be sustained. The defendant's right to recover for betterments does not depend upon the

wish of plaintiff for them or the sufficiency of the buildings already upon the land, *R. R. v. McCaskill,* 98 N. C. 526. The sole question, the defendant having placed these improvements upon the land under a *bona fide* belief that he owned the premises in fee simple, is whether or not the things which were put thereon as permanent improvements "substantially enhanced the value of the premises." If so, the defendant was entitled to recover to the extent of such enhancement in value of the property caused thereby, not exceeding the cost. In the plaintiff's appeal there is

No error.

### DEFENDANT'S APPEAL

The exceptions on the defendant's appeal present but a single question, and that is, whether the evidence therein offered tending to show a large outlay, and labor in preparing the soil to put it in condition for cultivation, and improving the fertility permanently by the use of a judicious system of tillage and high-grade fertilization over and above the ordinary fertilization of the property from year to year, should be submitted to the jury.

The defendant offered to show as follows: "That the defendant had also adopted and used a system of tillage with an idea of improving permanently the character of the soil and increasing its fertility, and that he had judiciously applied this system to the cultivation of this land; that he had burned and placed upon the land 8,000 bushels of oyster shells, burned into lime; that he had placed twenty loads of manure upon the lands the first year, besides that which came from the place; that he had placed upon these reclaimed acres 200 loads of manure a year in addition to the ordinary accumulation on the farm; that he had purchased and placed on it in addition to this an entire barge load of manure; that he had also placed upon the land 1,000 bushels of hard-wood ashes each year, for nine years, same having been taken from his mill, which was located in the neighborhood; that he had sowed the land with peas and clover and plowed them in for the purpose of increasing its fertility; that he had in his system of tillage adopted a judicious system in the rotation of crops and deep plowing peculiarly adapted to this soil, for the purpose of increasing its fertility; that in addition to the 8,000 bushels of oyster shells burned into lime, the defendant had placed on the land two carloads of agricultural lime of about 100 tons; that this was all in addition to the fertilizers used each year for the tillage of the crops, and for which no claim is made; that in following this line of effort to improve the soil the defendant had made a cash outlay in excess of $4,230.18, and that in his opinion such efforts had enhanced the value of the property to this amount."

Whether the above were applied, and whether they substantially enhanced the value of the farm, was fit for the jury to consider, and we think it was error to exclude the testimony offered.

This evidence tends to show an unusual and successful effort by which a run-down farm of about 143 acres, which had lain idle for almost a generation, had been brought into a high state of cultivation, and made, as the defendant contends upon the evidence, to "blossom like a rose." The mere cultivation of the soil in the ordinary use of the land and fertilization thereof for the purpose of raising crops in the ordinary course of tillage certainly would not constitute betterments. Only those things which substantially enhance the value of the premises permanently should be estimated by the jury and allowed to the defendant as compensation.

The statute does not permit a recovery except for improvements that are permanent and valuable. The word "permanent" is defined in the Century Dictionary as "lasting, or intended to last indefinitely," "fixed or enduring," "abiding," and the like, and it was held in *Simpson v. Robinson,* 37 Ark., 132, that an improvement does not mean a general enhancement in value from the occupant's operations.

It is elemental justice, as well as public policy, when a man occupies premises, "having reason to believe," C. S., 701, that he is owner thereof in fee simple, that to whatever extent he has increased the value of the property by permanent improvements thereon he should receive compensation from the party who recovers the premises.

The cultivation of the soil in a good and proper manner, and the keeping of the buildings in repair and the land in good condition does not entitle the defendant to recover compensation, but permanent improvements by clearing the land, ditching, fencing, and likewise high fertilization of permanent effect (over and above the ordinary fertilization for the purpose of making the crops), causing enhancement in the value of the farm—all these things are properly for the consideration of the jury, who should find what is a fair allowance for the permanent enhancement in value of the property thereby at the time of the recovery of the premises by the plaintiff.

But it is a matter of fact for the jury, rather than one of law, to estimate upon the evidence whether any of these things have added permanent enhanced value to the realty. If a building is placed upon the premises it will gradually decay; if ditches, fencing, or other betterments are made they will gradually deteriorate, if not kept up. "Permanent" improvements mean such betterments as will add to the intrinsic value of the property at the time it was recovered by the plaintiff whether there has been, in this case, unusually high fertilization of the land, or the addition to the soil of vegetable or mineral matter whereby the property has been permanently enhanced in value, when there is evidence offered to that effect, is for the jury to determine in estimating the benefit which the plaintiff derived therefrom. In the course of time, by

4—181

negligence, the buildings may deteriorate, and the enhanced production of the land may grow less, but the jury is to estimate what is the permanent added value to the premises at the time the plaintiff recovered the property. The difficulty is not in the principles of law applicable but as to matters of fact arising upon the evidence and which were for the jury to weigh and determine and which can never be exactly the same in any two cases. If unsuitable buildings are put upon the premises, no matter what the cost, the jury can find that it was no enhancement to the property thereby, so if the ditching and fencing were unnecessary or injudiciously made, the jury would consider the same. But it is not essential that they be useful to the plaintiff, *R. R. v. McCaskill,* 98 N. C., 526.

The sole matter for consideration is embraced in one proposition, and that is, "How much was the value of the *property* permanently enhanced, estimated as of the time of the recovery of the same, by the betterments put thereon by the labor and expenditure of the *bona fide* holder of the same?"

The matter is fully discussed and clearly set out in *Gibson v. Fields* (79 Kansas, 38), 17 Anno. Cas., 406, in the elaborate notes thereto appended.

Certain acts which amidst certain surroundings and conditions might enhance the property permanently, in other surroundings and conditions would add nothing to its permanent value. These are ordinarily matters for the jury, and no general rule can be laid down more definite than that above stated. In the defendant's appeal there was

Error.

STACY, J., concurring.

WALKER, J., dissenting. In 1907 defendant Williams received a deed for the lands in controversy from Mrs. Mary and Miss Mary Elizabeth Hughes, purporting to convey a fee simple. Defendant thereupon entered into possession of the lands, which he still occupies. In the main action this Court held that the plaintiff was entitled to recover the lands under the parol trust established. Under this trust it is admitted that the defendant took from the Hugheses a life estate, and the plaintiffs, in consequence, were not entitled to offset rents for the period running from 1907 to 15 May, 1915, inclusive, as against defendant's claim for betterments. At the time of the execution of the deed from the Hugheses to the defendant, Miss Mary Elizabeth Hughes was forty-four years of age, having an expectancy of twenty-five years. Upon rendition of the judgment in the main action, defendant filed this petition, claiming compensation for alleged permanent improvements made from 1907 to 1918, inclusive, defendant being still in the possession of the land by the order of the court. At the trial it was admitted that the enhanced value of the

land should be estimated as of 15 May, 1915, the date of Miss Mary Elizabeth Hughes' death.

Defendant upon the trial offered to show the expense incurred in breaking soil preparatory to putting the land in cultivation, and that it was necessary to put it in cultivation. This testimony was excluded, and defendant excepted. In this connection, it is to be observed that at the time the defendant took possession of this land it was all open land, which had theretofore been in cultivation and which had only been permitted to "lie out" for a number of years in accordance with the well known practice of farmers, in order to restore fertility. In no view of the evidence was it wild land or prairie land, which had never before been subject to cultivation.

The court permitted the defendant to offer evidence to show the cost of clearing this land; that is to say, the cost of cutting the trees upon the hedgerows, clearing hedges, the grubbing of stumps, and the taking out of reed patches, and further to show the enhanced value resulting from such improvements to the land; and that the only testimony rejected was that to show the alleged cost of breaking the land; that is to say, when regarded in connection with the evidence received, the doing of necessary plowing to enable the land to be planted and cultivated.

The law which is, perhaps, applicable to wild or prairie lands, has no relevancy here. These lands had been in cultivation, but their fertility, perhaps, had at one time been exhausted, and they had been permitted to "lie out," or remain fallow or uncultivated for one or more years, until they could by proper tillage and fertilization be made to yield a remunerative crop.

The doctrine of permanent improvements in cases of this kind is based upon the theory that one acting under a *bona fide* belief that he has the true title has done something the main purpose of which is to render the land more valuable; and does not include those things which, while they may have an incidental tendency to increase the value of the freehold, are yet done with the main purpose of increasing the current years revenue by producing a larger crop.

The defendant in this case was a life tenant, and he enriched the land, primarily at least, for his own benefit, that is, for the better enjoyment of the land by himself, and, even if there was a temporary enhancement of its value, it was purely incidental, and was not permanent in any correct sense of that word, as will presently be seen.

In any event, defendant, by the restriction of the statute, could not recover more than the amount actually expended by him in making the improvements, and plaintiffs asked for an instruction to this effect, which was refused. Consol. Statutes of 1919, sec. 701.

The second exception is based upon his Honor's exclusion of testimony tending to support the item in defendant's bill of particulars, entitled, "Improvement to soil, 1907 to 1918." In support of this claim defendant offered to show that by a system of rotating crops, and of plowing, and by the use upon this land of large quantities of stable manure, ashes, and lime, he had permanently improved it. The testimony was properly excluded, as the law does not consider fertilization of the soil as constituting a permanent improvement. *Crummey v. Bentley,* 114 Ga., 746; *Effinger v. Kenney,* 92 Va., 245; *Wright v. Johnson,* 108 Va., 855. It may be admitted, for sake of argument, that where lands are judiciously cultivated and properly fertilized by a tenant for life or years, they may be more valuable at the end of the tenancy than if they had been subjected to a haphazard or injurious use, but the improvement is not of that lasting character as is contemplated by the betterment statute. It is further true, however, that it is the duty which such a tenant owes either to his landlord, or to the reversioner, to cultivate the lands judiciously, and that the main purpose of such method of cultivation, and of proper fertilization also, is to increase the present tenant's revenues by the greater crop yield during his term. It may be, and perhaps is, quite true that the effect of manure and lime upon land is more enduring than that of the ordinary commercial fertilizer—the latter being used mainly because the former is not readily obtainable; but the effect of all these is nevertheless temporary, lasting by common knowledge not more than two or three years, the ordinary commercial fertilizer being supposed to exhaust itself in about one year's time. The use of manure and lime is, in a word, fertilization—a better class of fertilization it may be, but nevertheless only fertilization. It is to be remembered, also, in this connection, that at the time this land was fertilized by the defendant, he owned a life estate, the expectancy whereof was twenty-five years, and which in fact endured for nine years, during all of which the defendant occupied the land rent free, and it would be strange justice if the defendant, who has so occupied the land during this period, could recover for fertilization and judicious tillage during the period of his own life tenancy, when he was holding the lands for his own exclusive benefit.

Another reason why the testimony was properly excluded is that the defendant offered to show such fertilization and such tillage from 1907 to 1918, inclusive, together with the added value thereof to the land. Even assuming that these acts of defendant constituted permanent improvements, the defendant still could not recover for such improvements after the institution of this action in November, 1916, when he acquired full knowledge of the facts. It was the duty of the defendant, therefore, in offering this testimony, to restrict the same to the improvements claimed, and the enhanced value of the land therefrom to the period for which

defendant was entitled to recover for such enhancement. And the defendant, having failed to do so, and having included in his offered testimony as well the claim for improvements made after suit brought as those made before suit was brought, the testimony was properly rejected.

Reverting to the principal question, as to whether defendant could be allowed anything for cultivation, fertilization, tillage, etc., we find that the authorities are to the effect that he cannot have such remuneration, because these improvements are not of a permanent character. The Court said, in *Cumming v. Bentley, supra:* "Another item consisted of a claim for improvement to the land by reason of fertilization. The court held that the defendants were not entitled to any allowance upon these claims; and we are of the opinion that, even giving to the act in question its widest possible scope and operation, the views entertained by the trial judge were undoubtedly sound." See, also, *Effinger v. Kenney, supra,* and *Wright v. Johnson, supra.*

ALLEN, J., concurring in the dissent.