*Spence M. Grayson, H. M. Jordan,* and *Bouhan & Atkinson,* contra.

LAW, trustee, *v.* COLEMAN *et al.*

No. 8191.   JULY 16, 1931.

*Dasher & Carlisle, Park & Strozier, M. H. Blackshear,* and *S. W. Sturgis,* for plaintiff in error.

*G. C. Bidgood,* contra.

HINES, J. (After stating the foregoing facts.)

By an amendment to his answer the claimant alleged that the jury did not find in favor of the plaintiffs a special lien on land lots 5 and 6, and did not make any finding of facts upon which such special lien could be based; that for this reason the portion of the judgment awarding to the plaintiffs such special lien did not conform to the verdict, for which reason it was void; and therefore that the execution, though following the judgment, could not be levied upon these lots. On demurrer the trial judge struck the amendment. The claimant was not precluded from raising this point, at the last trial of the claim case, by the judgment rendered by this court when the case was here before. This point was not then raised, and was not then considered. Neither was the claimant estopped from excepting to the final verdict and judgment upon this ground. So we are called upon to determine whether the judgment in this case was void because the verdict did not find

in favor of the plaintiffs a special lien on these lots nor was there a finding of facts upon which such lien could be based. Judgments must follow the verdicts upon which they are founded. Civil Code (1910), § 5928. This principle does not require that no decree be rendered unless the verdict contains a finding of all facts upon which it can be based. A judge in rendering a decree can grant no relief contrary to the findings of fact made by the jury. A decree should follow a special verdict so far as facts are found thereby on the issues presented by the questions propounded, and the decree should be based thereon in connection with the facts admitted in the pleadings. *Churchill* v. *Bee,* 66 *Ga.* 621. Verdicts must have a liberal construction, and should be so construed as to stand, if practicable; and the judge may examine the entire pleadings, the admissions in the answer, and all undisputed facts, in making a final decree. *Mayor &c. of Macon* v. *Harris,* 75 *Ga.* 761 (10); *Glover* v. *Cox,* 137 *Ga.* 684, 689 (73 S. E. 1068). We must indulge all reasonable presumptions in favor of judgments and decrees. It will be presumed, in the absence of anything to the contrary, that the judge was authorized by the pleadings, by admissions in the answer of the defendant, or by the undisputed evidence, to embrace in his judgment the provision that the plaintiffs were entitled to a special lien upon these two lots of land. There is no allegation that the trial judge was not authorized either by the pleadings, admissions, or undisputed evidence in the case to insert this provision in the decree rendered. In this view the trial judge did not err in sustaining the demurrer to the amendment to the claim, which alleged that the judgment giving plaintiffs a special lien was void because the verdict did not find in favor of the plaintiffs a special lien on these lots. For the same reason the trial judge did not err in directing the verdict and in rendering judgment against the claimant upon this ground.

■ But conceding that the portion of the decree which established in favor of the plaintiffs a special lien on lots 5 and 6 was void for the reason that the verdict did not set up such lien on these lots, we can see no good reason why the execution, which issued upon the decree which granted a general lien upon all the property of the defendant, including, of course, these lots, could not be levied upon the latter. Counsel for the claimant take the position that, unless the verdict established a special lien upon

these lots, the execution which issued upon the decree which established a general lien upon all the property of the defendant, which included, of course, a lien on these lots, could not be levied upon the latter. No reason is given to sustain this position. No authority is cited to uphold it. When this case was here before, this court held that "A creditor, who brings suit to prevent his debtor from carrying into effect a threat to convey away all her property for the purpose of defeating claims of such creditor, acquires a lien from the commencement of the suit to prevent such fraudulent conveyance, and after service of process thereof." It was further held that "A pending suit is a general notice of any equity or claim to all the world from the time the petition is filed and docketed; and if the same is duly prosecuted, and is not collusive, one who purchases pending the suit is affected by the decree rendered therein." *Coleman* v. *Law,* 170 *Ga.* 906 (supra). Under the above rulings, the plaintiffs acquired a lien on these lots by the institution and due prosecution of their suit, after service thereof on the defendant; and it was for the enforcement of this lien that the final judgment in the case was rendered. The claimant obtained its security deed pending the suit of the plaintiffs, who were creditors of the defendant, and is, in the absence of all collusion, bound by the judgment finally rendered in the case. So we are of the opinion that the execution issued on that judgment, which established a general lien upon all the property of the defendant, including these two lots, could be levied on the latter as well as upon any other property of the defendant.

■ It is insisted by the claimant that if the plaintiffs had any lien on lots 5 and 6 they have lost or discharged it, as to these lots, by the consent decree of October 28, 1929, rendered in the cause into which the original action of the plaintiffs against their mother, and the ancillary proceeding of the plaintiffs against Morris and H. C. Stonecypher, were consolidated. This decree is set out in full in the statement of facts. Is this position sound? In their original suit the plaintiffs obtained a judgment against their mother, giving them a special lien upon the above lots and a general lien upon all the property of the defendant in that suit. They undertook to enforce their judgment lien on the above lots by levy thereon of the execution which issued upon such judg-

ment. The trustee of Penn Mutual Life Insurance Company filed a claim to these lots. The claim was based upon a deed executed by the defendant to secure a debt. This deed was made pending the suit in which the judgment was obtained. In aid of the claim an amendment was offered which set up these facts: On November 21, 1928, and pending this claim, plaintiffs filed their petition against E. C. Morris and H. C. Stonecypher. This petition set out in substance the facts alleged in the original suit of plaintiffs against their mother. It further alleged the rendition of the verdict and judgment in that case; that the action then brought by them against Morris and Stonecypher "grows out of and is ancillary to" the original action brought by them against Mrs. Stonecypher; that notwithstanding the pendency of the action by plaintiffs against their mother, she executed to the trustees of the Penn Mutual Life Insurance Company her deed to lots 5 and 6 to secure a loan made to her of $6,000; that on September 9, 1925, she sold to Morris lots 5 and 6, giving her bond for title, in which it was provided that Morris was to assume the loan to be obtained from the Penn Mutual Life Insurance Company of $6,-000, evidenced by notes and a deed to secure the same on lots 5 and 6, and that Morris was to pay the balance of the purchase-money to Mrs. Stonecypher represented by his two notes to her, one for $2,000 due September 28, 1928, and one for $5,000 due October 1, 1929, with interest coupons attached; that Morris paid a part of the $2,000 note, on which there was an approximate balance of $500 due; that on November 17, 1928, the day after the rendition of the verdict and judgment in favor of plaintiffs against their mother, Morris fraudulently executed a new note for the balance of the purchase-money due on said lots, payable to H. C. Stonecypher, when both knew that Morris owed Stonecypher nothing, and that the balance of the purchase-money on said lots was due to Mrs. Stonecypher from whom Morris purchased said lots; that Morris and Stonecypher were negotiating with the view of Stonecypher's discounting said notes at a heavy discount, which if carried out would discharge the obligation of Morris to their mother, and would put her assets of approximately $6,000 beyond the reach of plaintiffs and the satisfaction of their judgment; that Mrs. Stonecypher, Stonecypher, and Morris were insolvent; that the notes given by Morris to their mother are all of the assets owned

by her which could be subjected to their judgment. They prayed for appointment of a receiver to collect the above notes, that the proceeds thereof be applied to the satisfaction of their judgment against their mother, that Morris be restrained from paying said notes to Stonecypher or to Mrs. Stonecypher, and that Stonecypher be restrained from collecting or in any way disposing of the notes. To this proceeding Mrs. Stonecypher was made a party. On May 11, 1929, a decree was rendered in this proceeding. It permanently enjoined Morris, Stonecypher, and Mrs. Stonecypher from hypothecating or in any way interfering with Morris's notes for the purchase-price of this land, and appointed a receiver to collect the notes and apply the proceeds to the satisfaction of plaintiffs' judgment against their mother. On October 28, 1929, a further decree was entered in this consolidated cause. This was by consent. The terms of this decree are fully set out in the statement of facts. By it the receiver was ordered to collect all of said notes of Morris as soon as practicable, that out of the first $1,000 collected certain fees and costs should be paid, that out of the next $4,000 collected by the receiver on said notes $1,000 should be paid to the attorneys for Mr. and Mrs. Stonecypher, that the remainder of said sum, after paying court costs and $250 to the attorney for the plaintiffs, should be applied as a credit on the judgment which they held against their mother, that out of the balance of the money the receiver should pay to himself his final fees in the case to be determined by the court, and then fully pay off and discharge the judgment which the plaintiffs held against their mother, and the balance of the fund to be paid to the attorneys for Mr. and Mrs. Stonecypher in full settlement of their remaining equity in said notes. In this amendment the claimant asserts that by reason of the facts set forth therein the plaintiffs waived or lost the lien of the judgment obtained by them in their original suit against their mother. Counsel strongly pressed this view in the argument of this case. Is this contention sound? We think it is. A judgment creditor may lose, surrender, or waive the benefit of his lien. This will result from a renunciation of the privileges secured by the lien. So the taking of notes in payment of the execution issued on a judgment by agreement effectually extinguishes the lien of the judgment. *Chambers* v. *McDonald*, 4 *Ga.* 187. So if a judgment creditor files his bill to enforce a trust

executed by his debtor for the benefit of his creditors generally, it is a virtual waiver of his legal lien. *Jones* v. *Dougherty,* 10 *Ga.* 273 (11) The lien is waived if the judgment debtor receives part payment of his judgment out of the funds in the hands of the trustee for creditors. Effinger *v.* Kenney, 92 Va. 245 (23 S. E. 742). In this case the plaintiffs in their original suit obtained a special lien upon lots 5 and 6 for the amount due them by their mother. They then undertook to enforce this special lien by a levy of the execution issued on the judgment establishing their special lien upon these lots. The trustee of the insurance company filed a claim to these lots. Pending this claim and before the determination thereof, the plaintiffs filed a supplementary proceeding in which they set up that their mother had sold these lots to Morris under a contract by which Morris assumed the payment of the debt of their mother to the insurance company, secured by deed to these lots, and by which Morris gave his notes to her for the payment of the balance of the purchase-money for these lots and took from her a bond for title. In this proceeding they sought to subject the indebtedness due by Morris to their mother on these notes to the payment of the judgment which they obtained against their mother. The original suit brought by the plaintiffs against their mother, in which they obtained the judgment hereinbefore referred to, and this supplementary proceeding were consolidated. On May 11, 1929, a decree was rendered in this consolidated cause, permanently enjoining Morris, Stonecypher, and Mrs. Stonecypher from hypothecating, or in any way interfering with, Morris's notes for the purchase-money of these lots, appointing a receiver to collect the notes and apply the proceeds to the satisfaction of plaintiff's judgment against their mother. Subsequently a further decree was taken in this consolidated cause, providing that the receiver should collect these notes of Morris, and from the proceeds pay, among other claims, in full the judgment obtained by the plaintiffs against their mother.

By this supplementary proceeding the plaintiffs, in effect, abandoned their former proceeding to subject these two lots to the payment of their judgment against their mother. They no longer sought to subject these lots to the payment of their judgment. On the contrary they sought to subject the debt due by Morris to their mother for the purchase-money of these lots to the payment of the

judgment which they obtained against their mother. By this proceeding they ratified and confirmed the sale made by their mother of these lots to Morris. Instead of subjecting these lots to their judgment, they undertook to subject thereto the proceeds of the purchase-price thereof due by Morris to their mother. They thus took a new tack from the one which they took in their original proceeding. They undertook to enforce this trade with Morris, in order to obtain payment of the judgment originally obtained against their mother. This being so, they can not enforce their judgment against their mother by levying the execution which issued thereon on these two lots. The final decree taken in the consolidated cause did not preserve the lien of the judgment of the plaintiffs, so far as these two lots are concerned. This decree fixed the rights of the plaintiffs. The lien of the former judgment was thus waived by the plaintiffs, and was lost as to these lots. The plaintiffs will now have to proceed, so far as these lots are concerned, under this final decree. As the plaintiffs can not now enforce their judgment against these lots, and as the defendant in such judgment could defeat the sale of these lots under the levy of the execution issued on the original judgment, the claimant can avail himself of such defense by the defendant. Any fact which renders the property not subject to the levying fi. fa., or which is inconsistent with the plaintiffs' right in selling the property, will support a claim. *Wade* v. *Hamilton,* 30 *Ga.* 450; *Hurley* v. *Epps,* 69 *Ga.* 611; *Rowland* v. *Gregg,* 122 *Ga.* 819 (50 S. E. 949) ; *Penton* v. *Hall,* 140 *Ga.* 576 (79 S. E. 465). The claimant can always attack the judgment and the levy on any ground showing the invalidity of either. *Beacham* v. *Nobles,* 153 *Ga.* 718 (113 S. E. 6).

So we are of the opinion that the trial judge erred in sustaining the demurrer to the amendment offered in aid of the claim in which the claimant undertook to set up the invalidity of the execution upon the ground set up in the amendment.

*Judgment reversed. All the Justices concur.*